Florence Hart McINTURFF, Plaintiff
in Error,

v.

**OKLAHOMA NATURAL GAS TRANSMIS-
SION COMPANY, a Corporation, De-
fendant in Error.**

No. 42627.

Supreme Court of Oklahoma.

Sept. 15, 1970.

As Corrected Oct. 23, 1970.

Brown, Brown, Brown & Hackler, Mc-Alester, for plaintiff in error.

James L. Kincaid, Donald A. Kihle, Huffman, Arrington, Scheurich & Kincaid, Tulsa, for defendant in error.

LAVENDER, Justice.

In this appeal by the landowner in a condemnation proceeding the appellant contends that her entire property (995 acres) was being operated by her as one single unit for ranching purposes. Further, that the pipeline to be installed across her property diagonally caused a reduction in the value of the entire ranch and that she was entitled to these damages in addition to compensation for that part of the property actually taken for the pipeline purposes (a strip 66 feet by 3383 feet). It is landowner's position that the only competent evidence was introduced by her as to the diminution in value to the remainder of her property and therefore that the trial court should have—as a matter of law—entered judgment for her in the amount established by such proof.

The commissioners' award was $2,050.-00; the jury verdict: $550.00; the evidence of the landowner: $3,000.00.

The landowner, after the verdict of the jury was returned (in the amount of $550.-00) and judgment was entered accordingly, filed a combined motion for new trial and motion for judgment notwithstanding the verdict as permitted by 12 O.S.1961, § 698.

Both motions were thereafter denied. The motion for new trial, of course, did not allege error of the trial court in ruling upon the motion for judgment notwithstanding the verdict.

Thereafter, within ten days, landowner filed her second motion for new trial in which she re-alleged the errors complained of in the first motion for new trial and in addition alleged error of the trial court in denying the motion for judgment notwithstanding the verdict.

Landowner's only petition in error here was filed after the running of the statutory time following the trial court's ruling on the first motion for new trial but within that period following the overruling of the second motion for new trial. We are of the opinion and hold that, under these circumstances, only the errors, if any, of the trial court in overruling the appellant's motion for judgment notwithstanding the verdict are presented for our consideration. 12 O.S.1961, § 956.2.

We shall limit our consideration of this case to those errors alleged in the second motion for new trial which are, of necessity, involved in a proper determination of whether the trial court erred in denying appellant's motion for judgment notwithstanding the verdict.

The pertinent law with respect to motions for judgment notwithstanding the verdict is contained in the following portion of 12 O.S.1961, § 698:

"When a motion for a directed verdict which was made at the close of all of the evidence should have been granted, the court shall, at the request of the moving party, render judgment in his favor though a verdict has been found against him. * * *."

The question of whether or not the landowner's motion for judgment notwithstanding the verdict should have been sustained depends upon whether or not her motion for a directed verdict, made at the close of all of the evidence, should have been granted. Since some of her property was taken for public use, there can be no question but that she would be entitled to proper compensation from the condemnor for the property taken and/or damaged by such taking (Section 24 of Article 2 of the Oklahoma Constitution). Thus, it appears that

the question presented by her motion for judgment notwithstanding the verdict was whether or not, under the law applicable to the evidence in such cases, and the competent evidence presented, she was, at the close of all of the evidence when she moved for a directed verdict, entitled to judgment *in some specified amount* which the trial court could direct the jury was the amount of her damages.

Concerning her motion for judgment notwithstanding the verdict, the landowner argues, in substance and effect, that the condemnor's only witness concerning market values and damages was not shown to be qualified as an expert in the field; that, even if the trial court did not err in allowing that witness for the condemnor to testify concerning his opinion as to market values and damages over her objection, his testimony did not conform to the rule as to the measure of damages where part only of a tract used as a single unit of operation was being taken; that, under the only competent evidence in conformity with such rule as to the measure of damages (the testimony of her witnesses), the minimum amount of her damages was $3,000.00; and that, in a situation of that kind, she was entitled to judgment in that amount.

The landowner's argument is based upon the rule stated in the first paragraph of this court's syllabus to Mid-Continent Pipe Line Company v. Emerson et al. (1962), Okl., 377 P.2d 565, where, as here, a pipeline right-of-way easement was being taken by condemnation proceeding:

"Where a part only of a tract of land is condemned and damages are sought for the value of that taken, and damages to that not taken, the measure of damages is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the portion left immediately after the taking."

The same rule has been applied where fee-simple title to a portion of a tract of land was being taken by condemnation [City of McAlester v. Delciello et al. (1966), Okl., 412 P.2d 623], and where the condemnor's use of a right-of-way or easement for the purpose for which it was being taken would preclude any use of that portion of the tract by the landowner [State of Oklahoma ex rel. Department of Highways v. Weaver (1956), Okl., 297 P. 2d 549].

The condemnor in the present case does not question the rule as to the measure of damages in these cases, as stated in the Mid-Continent Pipe Line Company case, supra, but does question the way in which this landowner would have the rule applied to a total of 995 acres of land owned by her, although the pipe line right-of-way in question actually traverses only the governmental-survey quarter-section of land described in the condemnor's application for the appointment of commissioners.

A plat attached to the application for the appointment of commissioners shows the center line of the right-of-way traversing the Northeast Quarter of Section 5, Township 15 North, Range 14 East, in Okmulgee County, Oklahoma, from a point about 345 feet north of the southeast corner thereof to a point 168 feet south of the northwest corner thereof, with only one slight change of direction (nine degrees, 30 minutes) between those two points.

The evidence discloses that, some time prior to the commencement of the district court trial, the pipe line had been laid in a trench within the described right-of-way, at least three feet below the surface at all points, and the trench back-filled and leveled in such a way that farm vehicles and equipment could be driven the length of the right-of-way as well as across it, and that the right-of-way was not fenced off from the rest of the 160-acre tract.

There was undisputed evidence that, at the time of the taking involved herein, Mrs. McInturff was the owner, in fee simple, of the Southwest Quarter, and the Northeast Quarter and South Half of the Southeast Quarter, of Section 5, and the Northeast Quarter, and the South Half of the Northwest Quarter, of Section 8, and

the East Half of Section 7, all in Township 15 North, Range 14 East, in Okmulgee County, Oklahoma (a total of 835 acres), as well as being the owner, in fee simple, of the 160-acre tract actually traversed by the right-of-way in question and described in the condemnor's application for the appointment of commissioners (the Northeast Quarter of Section 5, Township 15 North, Range 14 East, in the same county), and had been, and then was, operating the entire 995 acres as a single unit in the raising of cattle.

There also was evidence that there were no buildings on the quarter-section of land traversed by the right-of-way, although there were three residence buildings and accompanying buildings on one of the quarter-sections included in the 835 acres mentioned above.

Five witnesses upon behalf of the landowner testified that cattle ranching was the highest and best use to which the land could be put at that time, and also testified concerning the amount of depreciation in the market value of the 995 acres as a result of the pipe line and the condemnor's rights incident thereto. Two of them (one of her brothers, and a licensed real estate broker) said that the decrease in market value of the 995 acres was $3,000.00. Another one (a farmer and hay baler living about 20 miles from the 160 acre tract traversed by the right-of-way) placed the decrease in market value of the 995 acres at $10.00 per acre. Another one (the owner of some land about 10 miles from the 995 acres) said that the decrease in the market value of the 995 acres would be at least $7.00 per acre. The fifth one (an independent appraisal contractor) stated that, based upon his knowledge and experience, and his personal inspection of the premises and of records of sales of ranch land in the general area in which this land is located, it was his opinion that the existence of the pipe line across the one quarter-section, and the rights connected therewith, decreased the market value of the 995 acres in the amount of $6,000.00.

Of the five witnesses for the landowner who testified concerning the decrease in the market value of the 995 acres, only the independent appraisal contractor was asked if, or how, the existence of the pipe line across the Northeast Quarter of Section 5-15N-14E, and the condemnor's rights in connection therewith, would diminish the market value of any one or more of the other 835 acres involved in his estimate. On that point, he testified, in substance and effect, that selling the 995 acres as a unit would bring the highest and best price for the 995 acres; that, selling the land that way, the market value of the 835 acres would be decreased by the existence of the pipe line across the other 160 acres, and the rights incident thereto, because they would be a part of the 995-acre unit being sold, and the 995-acre unit would not bring as much subject to the condemnor's rights as it would bring if it were not subject to such rights.

He testified that the existence of the pipe line across the Northeast Quarter of Section 5-15N-14E, and the condemnor's rights incident thereto, would not reduce the market value of the buildings located upon one of the quarter-sections of land included in the 835 acres (which he had valued separately from the land itself in computing the market value of the 995 acres immediately before the taking of the right-of-way).

He did not testify that the right-of-way across the one quarter-section of land owned by Mrs. McInturff would reduce, or would not reduce, the market value of the other 835 acres if they were to be sold without the quarter section traversed by the right-of-way.

Insofar as his testimony is concerned, any reduction in the market value of the 835 acres not traversed by the right-of-way would result from combining them with the quarter-section traversed by the right-of-way, for the purpose of getting the highest and best price for the 995 acres, rather than from the existence of the right-of-way across the Northeast Quarter of Section 5-15N-14E.

Only one witness for the condemnor—a man who had been in the real estate and insurance business for about 10 years—testified concerning market values and damages, and he was allowed to do so over the objection of the landowner that he had not been shown to be qualified as an expert in the field. He testified, in substance, that some parts of Mrs. McInturff's land were better than other parts thereof, but the over-all average market value of her land before the taking was $90.00 per acre; that the pipe line and rights incident thereto would reduce the market value of *the land included within the 66-foot by 3383-foot right-of-way* (which, according to our figures, would amount to 5.1257 acres) to $80.00 per acre, for a decrease of $10.00 per acre for the land included within the right-of-way; and that, in his opinion, the other property was not damaged at all by the right-of-way.

▆ The landowner also contends that this testimony is not in accordance with the rule as to the measure of damages in these cases as set forth in Mid-Continent Pipe Line Company v. Emerson et al., supra, because it does not consider the before-taking, and after-taking, market values of her 995-acre operating unit. We think that it is in accordance with that rule, whether the larger "tract" of land be considered as 160 acres or be considered as 995 acres, for, either way, the difference between the before-taking market value, and the after-taking market value, of such larger "tract" is an amount equal to ten dollars multiplied by the number of acres included within the right-of-way. Clearly, it meets the same rule as stated in a slightly different way in Oklahoma Gas & Electric Company v. Kelly et al. (1936), 177 Okl. 206, 58 P.2d 328; Grand River Dam Authority v. Gray et al. (1943), 192 Okl. 547, 138 P.2d 100, 103; and Western Farmers Electric Cooperative v. Yates (1955), Okl., 288 P.2d 723, 724:

"The measure of damages in condemnation proceedings where private property is taken in the exercise of the right of eminent domain under the statutes of Oklahoma is the market value of the property taken, at the time it is so taken, and for the impairment or depreciation of value done to the remainder."

In the Grand River Dam Authority case, supra, the statement of that rule is followed by the statement:

"And in ascertaining the amount of damages it is proper, among other things, to consider the inconvenience and annoyance likely to arise in the orderly exercise or conduct of the enterprise which interferes with the use and proper enjoyment of the property by the owner and *which sensibly impairs its value.* (Emphasis supplied)

▆ The Grand River Dam Authority case, supra, is one of the Oklahoma cases which are said to recognize the "unit of operation" rule relied upon by the landowner herein to sustain her contention that the testimony of the condemnor's only witness as to market values and damages (if he was properly qualified) was not in accordance with the rule as to the measure of damages in such cases because such testimony completely ignored the "unit of operation" rule applied in such cases. Even under the "unit of operation" rule, the allowance of damages with respect to the portion of such a unit which is not taken by the condemnor is not automatic, but the taker's orderly use of the portion actually taken must result in inconvenience and annoyance which interferes with the owner's use and proper enjoyment of the portion of the unit not taken and for which the owner seeks damages, and thereby sensibly impairs its value. Also, see: Oklahoma Turnpike Authority v. Williams et al. (1953), 208 Okl. 577, 257 P.2d 1052, 1054 (wherein the use of the strip taken for turnpike purposes would effectively split a 160-acre farm into two separate parcels of land), and Board of County Commissioners of Tulsa County v. Morgan et al. (1958), Okl., 324 P.2d 268, 270 (wherein a tract of land that had been platted into thirteen lots was traversed by the right-of-way being taken for highway purposes in such a way that it took ten of the lots, in whole or in part, and apparent-

ly cut off the remaining three lots from direct access to the highway, thereby reducing their value for development purposes).

■ While the evidence of the landowner in the present case showed that she owned 995 acres of land which she operated as a single unit for cattle ranching purposes, she did not offer any evidence that the condemnor's orderly use of the portion thereof actually taken for a pipe line right-of-way would, in any manner or to any extent, result in any inconvenience or annoyance which would interfere with the use and proper enjoyment of any of the land not actually included in the right-of-way, and, thereby, sensibly impair the value of any of the rest of such unit—even any of the rest of the quarter-section of land traversed by such right-of-way.

Furthermore, none of the landowner's witnesses was asked, or testified, about the difference between the before-taking market value, and the after-taking market value, of the strip of land actually taken for right-of-way purposes, and none of them was asked, or testified, about the difference, *if any*, between the before-taking market value, and the after-taking market value, of either the quarter-section traversed by the right-of-way or of the other 835 acres of land.

Her evidence not only did not meet the requirements of the rule as to the measure of damages in such cases, as set forth in Mid-Continent Pipe Line Company v. Emerson et al., supra, and in Oklahoma Gas & Electric Company v. Kelly et al., supra, and as applied in the "unit of operation" cases cited above, with respect to the portion of a tract or unit not taken, but it also failed to establish the amount of damages to which she was entitled for the portion taken for right-of-way purposes.

So, even disregarding the testimony of the condemnor's only witness concerning market values and damages—as the landowner would have us do in order to sustain her contention that, under the only competent evidence meeting the requirements of the proper rule as to the measure of damages in these cases, she was entitled to judgment in the amount of $3,000.00, the minimum amount of her damages as established by her evidence—reasonable men could, very well, disagree as to the amount of damages sustained by this landowner, as disclosed by the competent evidence in accord with the rule as to the measure of damages in these cases. Her evidence does not even establish the minimum amount of damages for which she would, as a matter of law, be entitled to judgment. This makes it unnecessary for us to determine whether or not the condemnor's witness concerning market values and damages was shown to be qualified as an expert in that field, or whether or not, as a matter of law, she would be entitled to judgment in the minimum amount of damages shown by her evidence, if that witness for the condemnor was not shown to be qualified as an expert, or if his testimony was not in accord with the proper rule as to the measure of damages in such cases.

Therefore, at the close of all of the evidence, the landowner in the present case was not, as a matter of law, entitled to judgment in any specified amount, and, in view of the provisions of 12 O.S. 1961, § 698, supra, the trial court did not err in overruling her motion for judgment notwithstanding the verdict.

We point out that all of the proceedings in the trial court in this case were had prior to the adoption, on January 8, 1969, of the Rules of the Supreme Court for Perfecting Appeals in Civil Cases, which are set forth in the 1969 Supplement to the Oklahoma Statutes 1961, following Section 990 of Title 12.

The order overruling motion for judgment notwithstanding the verdict is affirmed.

IRWIN, C. J., and DAVISON, WILLIAMS and HODGES, JJ., concur.

BERRY, V. C. J., and JACKSON and McINERNEY, JJ., dissent.

BERRY, Vice Chief Justice (dissenting):

My dissent to the majority opinion is upon the basis the purported appeal was not lodged within time and this Court never acquired jurisdiction of the cause.

The statute, 12 O.S. 1961, § 698, was construed in Stillwater Milling Co. v. First National Bank, Okl., 391 P.2d 807, wherein function of the motion was considered. There we stated the effect of such motion simply invoked the trial court's consideration as to whether there was evidence upon which to base a verdict, or judgment. Neither reason nor authority can be offered to support the proposition that after motion for new trial and motion for judgment notwithstanding verdict, have been presented and overruled a subsequent motion of identical tenor performs any function. It is my opinion the statute, supra, was not intended and cannot properly be construed as a vehicle for extending time for appeal.

The majority affirms the trial court. This I would accomplish by dismissing the appeal on jurisdictional grounds.

I am authorized to state that McINERNEY, J., concurs in the views herein expressed.