**EKE BUILDERS, INC., Appellant,**

**v.**

**QUAIL BLUFF ASSOCIATES, an Oklahoma partnership, Douglas Corvin, as a partner and individually, and J.R.W. Properties, Inc., an Oklahoma corporation as a partner and in its corporate capacity, Appellees.**

**EKE BUILDERS, INC., Appellee,**

**v.**

**QUAIL BLUFF ASSOCIATES, and J.R.W. Properties, Inc., Appellants.**

**Nos. 61411, 61710.**

Court of Appeals of Oklahoma,
Division No. 4.

Dec. 24, 1985.

Rehearing Denied Jan. 21, 1986.

Released for Publication by Order
of the Court of Appeals.

Kenneth I. Jones, Jr., Pamela Bolt, Eagleton, Nicholson, Jones, Blaney & Pringle, Oklahoma City, for EKE Builders, Inc.

J. Edward Barth, Bobbie T. Shell, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for Quail Bluff Associates and J.R.W. Properties, Inc.

Jon M. Masters, Oklahoma City, for Douglas Corvin.

BRIGHTMIRE, Presiding Judge.

Do material issues of fact exist which prevent a summary adjudication of this action? The trial judge concluded there were none and granted defendants a summary judgment. We hold, however, material issues exist and reverse.

## I

On December 14, 1982, K & E Builders, later incorporated as EKE Builders, Inc., entered into a contract with Quail Bluff Associates, a partnership, for the construction of an apartment complex in Oklahoma County.[1] The contract required Quail

---

1. The contract was executed on behalf of Quail Bluff by Douglas Corvin, its "General Partner." According to the record, however, Quail Bluff Associates was not formed until December 31, 1982, with Douglas Corvin and J.R.W. Properties, Inc., as its general partners. Quail Bluff alleged that it could not be held liable for an obligation incurred prior to its existence and

Bluff to pay plaintiff $7,165,923 for the building project and was contingent on Quail Bluff's obtaining a loan of not less than $6,500,000. The contract further provided that "[i]f such construction funds are not, for any reason, obtained and recorded for this project from time to time as required by the Owner [Quail Bluff], Owner may terminate this Agreement . . . ."

On January 6, 1983, defendant Douglas Corvin allegedly notified EKE that the lender, RepublicBank Dallas, would not approve EKE as contractor under any circumstances. On that same date, defendants employed Western Construction Company, a competitive bidder, to handle the Quail Bluff project for $7,053,000. A construction loan commitment was issued by the bank on January 10, 1983, which, among other things, provided that Quail Bluff could not enter into any contract for construction on the property "except upon such terms and with such parties as shall be approved in writing by Lender."

But to back up a bit. The facts are that, contrary to the Quail Bluff representation, RepublicBank mailed a letter to Quail Bluff dated January 6. It was received by Quail Bluff in an envelope bearing a postmark date of January 11, 1983, and said that "K & E Construction does not meet minimum underwriting standards. Consequently, *they are not acceptable as general contractor for the Quail Bluff project without a $7,165,923.00 Payment and Performance Bond* from a bonding company approved by RepublicBank Dallas." (Emphasis added.) Without informing EKE of this or giving it the chance to comply with the bond requirement, Quail Bluff immediately entered into a contract with Western, finalized it on February 3, 1983, and obtained lender approval that same day.

Eventually, EKE Builders learned of Quail Bluff's deception and on January 19, 1983, notified defendants in writing that it regarded their actions as a total breach of its contract. Not realizing that Quail Bluff had already contracted with Western, Plaintiff advised defendants it was willing and able to post the required bond, demanded that defendants express a willingness to honor its contract, and asked to be granted 15 days to post the requisite performance bond. The letter further notified defendants that if such action was not taken litigation would be filed on January 25, 1983.

Defendants did not, of course, respond with the requested expression but instead procured a letter from the lending bank dated January 25 reciting that EKE had been unconditionally disapproved as contractor.

The next day, plaintiff EKE brought an action against Quail Bluff Associates, Douglas Corvin and J.R.W. Properties, seeking damages for the detriment it had sustained. Two causes of action were pleaded in an amended petition. One, sounding in tort, alleged that Quail Bluff made false representations concerning the bank's requirements and generally failed to deal with plaintiff in good faith causing detriment to plaintiff in excess of $1,000,-000. The other cause was for breach of the contract. Among the allegations was one to the effect that EKE was at all times ready, willing, and able to produce such a bond. And it pleaded that its detriment was lost profits in the amount of $1,200,-000. A conspiracy between Quail Bluff and the bank to tortiously deprive plaintiff of its contractual benefits was not alleged.

Defendants moved for summary judgments on the ground that the lender's disapproval of EKE as a contractor constituted a failure of a condition precedent to acceptance of the agreement, and therefore, there could have been no breach. Ignoring the tort issue, the trial court agreed with defendants and entered judgments in favor of all three of them based upon the legal conclusion that there was no breach

that EKE was not the real party in interest because it was not a party to the contract. The trial court sustained the defendants' motions for summary judgments on the grounds of failure

of a condition precedent and therefore found that the foregoing issues concerning proper parties and liability were moot.

of the contract as pleaded by EKE Builders, but rather a "failure of a condition precedent to acceptance of the agreement." Implicit in this language is a further ultimate conclusion that no enforceable agreement ever existed under the undisputed facts and that defendants never acted in bad faith.

## II

The primary question, of course, is whether, with regard to the two causes of action pleaded, there is an absence of any material issue of fact requiring entrance of judgment for one or the other of the parties.

As we said, plaintiff has stated two causes of action and that, if its allegations are found to be true, it is entitled to recover for tort as well as contractual detriment. And a number of issues, we think, emerge from the pleadings relating to specific rights and obligations of the parties.

The undisputed fact is that on December 14, 1982, a valid construction contract between plaintiff and Quail Bluff was executed calling for the construction of a 360-unit apartment complex. Quail Bluff, through its general partner, swore in an interrogatory that it terminated the contract because the "project lender ... advised Defendant that K & E Construction was not acceptable as General Contractor for the project," and that it did so under the provisions of paragraph 6 of the contract which makes the agreement "contingent upon the Owner obtaining a loan from the Lender in a sum of not less than ... $6,500,000." And finally, in answers to interrogatories, Quail Bluff admitted an inability to recall advising plaintiff about the lender's bond requirement or requesting it to obtain the required bond prior to the termination. Instead, it said, it asked a competing bidder, Western Construction Company, to submit a new bid which turned out to be about $113,000 less than plaintiff's.

It was on January 6 that three significant events took place.

First. David Ardire, assistant vice president of lender bank dictated a letter addressed to defendant Corvin, the general partner of Quail Bluff, advising that K & E was "not acceptable as general contractor for the Quail Bluff project without a $7,165,923.00 Payment and Performance Bond from a bonding company approved by RepublicBank Dallas."

Second. A Quail Bluff official called EKE and represented that RepublicBank would not approve EKE under any circumstances and Quail Bluff was therefore terminating the contract.

Third. Quail Bluff entered into a general contract with Western.

If these facts are true, and they certainly appear to be, then the legal effect is that Quail Bluff not only breached the EKE agreement but committed the tort of deceit to accomplish it. In an apparent effort to either counteract or cover up its bad faith repudiation, Quail Bluff obtained a second letter from David Ardire of RepublicBank dated January 25, 1983, acknowledging the contents of its January 6 letter and adding this: "This letter confirms our conversation on or about January 10, 1983 wherein I advised you that information received by the Bank subsequent to January 6, 1983 caused us to reconsider our position and to disapprove K & E Builders unconditionally."[2] The record does not disclose the nature of the subsequently received information but one wonders if it was that Quail Bluff had already breached the EKE contract and made a new one with Western. Needless to say that whatever RepublicBank decided after January 6 had no operative or legal effect on the rights of EKE and Quail Bluff arising from their contract. Those rights became fixed on January 6, 1983, when Quail Bluff took the irrevocable step of contracting with Western.

█ In defense of the summary judgment Quail Bluff seeks to justify what it

---

**2.** It will be recalled that Mr. Ardire's January 6 letter was mailed on January 11, a day after his alleged confirmation phone call to Mr. Corvin, Quail Bluff's general partner.

did on the theory that such a termination of the agreement was permissible under paragraph 6 of the contract.[3] This clause makes performance of the principal obligations under the contract contingent on (1) the owner obtaining a $6,500,000 construction loan and (2) the continuous periodic receipt of loan proceeds throughout the construction. It is only the first contingency we are concerned with here.

While it may or may not become a material legal issue in the course of further dispositional proceedings in this case we should point out that paragraph 6 of the December 1982 prime contract cannot in any event be construed to permit arbitrary or unreasonable conduct on the part of either the owner or the lender if it is prejudicial to the contractual expectancy interests of EKE. The owner is obliged to make a good faith effort to obtain the required loan and he cannot condone the making of unreasonable requirements by a prospective lender or allow the lender to exercise an arbitrary veto power concerning the prime contractor chosen by the owner. The law will not allow the owner and a lender to collusively deprive the prime contractor of the rights he acquired in the bargain.

Obviously, nothing in the clause authorizes the owner to practice fraud and deceit. On the contrary, implicit in the language used is the imposition of a duty on the owner to make a good faith effort to satisfy the loan contingency and to deal fairly with the contractor. While the paragraph does not expressly say so, we think it was undoubtedly never contemplated by preparers of the standard contract form, and certainly not by EKE, that unreasonable or arbitrary conditions or requirements could be made by a prospective lender under the guise of obtaining protection from exposure to undue risk. And the corollary implication is that if reasonable requirements are made, the owner has a duty to afford the general contractor an adequate and fair opportunity to comply with them. This is how plaintiff understood the agreement because once it learned of the bond requirement it advised Quail Bluff that it was willing and able to satisfy the lender's requirement and asked for a chance to do so. But, of course, it was too late—the Western contract had already been made.

■ Aside from the tortious deceit which seems to have been practiced by Quail Bluff, its declarations and acts amounted to a repudiation of the contract justifying plaintiff to treat the contract as totally breached and to immediately sue for damages. *Mobley v. New York Life Ins. Co.,* 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621 (1935). Notice need not be given by the promisee that the repudiation is being treated as a breach. *Continental Casualty Co. v. Boerger,* 389 S.W.2d 566, (Tex. Civ.App.1965).

■ We hold, therefore, that it was error to grant defendants a summary judgment. There appear to be several issues to resolve including the bad faith breach alleged by EKE. As we said earlier, the latter has alleged two causes of action— one sounding in tort and the other ex contractu. An implied covenant to act in good faith and deal fairly inhered in subject contract. Its bad faith breach carried with it the consequences described in *Christian v. American Home Assur. Co.,* 577 P.2d 899

---

**3.** Paragraph 6 reads:

"6. *Construction Loan:*
The parties hereto acknowledge and agree that the obligations imposed by the provisions of this Agreement are contingent upon the Owner obtaining a loan from the Lender in a sum of not less than Six and one-half Million Dollars, ($6,500,000), for the construction of the Improvements on terms satisfactory to Owner. If such construction funds are not,

for any reason, obtained and recorded for this project from time to time as required by the Owner, Owner may terminate this Agreement, or at its option, may designate which portions of the work covered by this Contract shall be performed by Contractor. In the event of such termination, in whole or in part, Owner shall incur no obligation to Contractor other than to make payment for work performed and costs incurred prior to such termination."

(Okl.1978).[4] The same principle applies to contracts generally. *See, e.g., Trans Container Services v. Security Forwarders, Inc.,* 752 F.2d 483 (9th Cir.1985); *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 686 P.2d 1158, 206 Cal.Rptr. 354 (1984).

### III

The remaining matter to be disposed of is Quail Bluff's appeal from the order denying its motion for recovery of its attorney fee against EKE under 12 O.S.1981 § 936. Obviously, in view of the conclusion we have reached in EKE's appeal, Quail Bluff has not achieved the required status of the "prevailing party" and from the looks of the record is not ever likely to.

On remand the trial court will want to consider the provisions of not only section 936 but paragraph 15 of the EKE-Quail Bluff contract in determining partisan liability for attorney fees.

The summary judgment is reversed and this cause is remanded for further proceedings.

RAPP, J., concurs.

STUBBLEFIELD, J., concurs in result.

---

4. *See also Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907 (Okl.1982), discussing at some length an implied covenant of good faith and fair dealing that is a part of every insurance contract. The fact that punitive damages have not yet been requested is immaterial. They may be waived or since they cannot and do not involve a new claim—that is a separate cause of action—but must attach to a cause of action for compensatory damages, the punitive damages may be sought at any time before trial without regard to the statute of limitations. *Davidson v. First State Bank & Trust Co., Yale,* 609 P.2d 1259 (Okl.1976); *Western Union Telegraph Co. v. Garrett,* 59 Okl. 50, 158 P. 619 (1916).