2003 OK CIV APP 62

Karen PETERS, Plaintiff/Appellee,

v.

AMERICAN INCOME LIFE INSUR-
ANCE COMPANY, a corporation,
Defendant/Appellant,

and

David E. Dwyer, Defendant.

No. 95,995.

Court of Civil Appeals of Oklahoma,
Division No. 2.

June 4, 2002.

Rehearing Denied July 22, 2002.

Certiorari Denied May 12, 2003.

Timothy A. Carney, Gable & Gotwals, Tulsa, OK, for Plaintiff/Appellant.

Gary A. Eaton and W.E. Sparks, Tulsa, OK, for Defendant/Appellee.

Opinion by KEITH RAPP, Judge:

¶ 1 The trial court defendant, American Income Life Insurance Company (AIL), appeals an Order overruling its motion for new trial and for judgment N.O.V. after a jury verdict was entered in favor of the trial court plaintiff, Karen Peters (Peters). AIL, by supplemental appeal, further appeals the judgment in favor of Peters for attorney fees and costs.

## BACKGROUND

¶ 2 Peters sued AIL for breach of contract and bad faith because she claimed that AIL failed to pay the proceeds of a life insurance policy and an accident policy issued to her mother, Reba Deason (Deason). The face amount of life insurance was $4,060.00. The accident policy had a death benefit for automobile accident of $40,000.00 Deason died in an automobile accident on December 4, 1996.

¶ 3 Peters found the two policies in her mother's belongings following her death and caused a claim to be filed. AIL declined to pay either policy on the ground that Deason had not paid the initial premiums for either of the policies. Peters filed this lawsuit.

¶ 4 Peters testified at trial that she and her husband purchased insurance from AIL in August 1996. She described the transaction as one where the agent came to the home, completed the application, and then required immediate payment of the premium. The application form noted payment of the premium.

¶ 5 Peters' referred AIL to her mother, Deason, because her mother was interested in obtaining insurance of the type and cost provided by AIL. Arrangements were made for an AIL agent, William Bowling (Bowling), to call upon Deason and he did so in August of 1996. Peters testified she informed her mother of the need to have cash on hand to pay the premium. She also testified without dispute that her mother paid her bills in cash or by money order.

¶ 6 AIL admits that the life and accident insurance policies here under dispute were mailed to Deason on November 27, 1996. The life insurance policy, with the application form dated August 12, 1996 attached, was admitted into evidence at trial. The application form had a block styled "Premium paid with application." Bowling completed this block in his handwriting, showing a premium of $17.53 paid. The policy had language stating that the policy was issued in consideration of the application and payment of premium and that the policy is a contract. A

"Modifications" sheet was also attached to the policy. The modification reflected an increase in premium from $17.73 to $27.53. The policy was shown to have an effective date of November 14, 1996.

¶ 7 The accident policy with its attached application was also placed in evidence. The application form had a similar block but stating only the word "Premium" and Bowling entered the premium amount in the block. This policy also had a block with the total money inserted under the heading "CWA." Testimony established that these initials stand for the phrase "cash with application." The policy in the appellate record here does not have a modification sheet attached. Policy language stated that it was issued in consideration of payment of the first premium. Other policy language terms the policy a contract. This policy also provided for an effective date of November 14, 1996.

¶ 8 When funeral arrangements were made, Peters supplied the funeral home with the policies in question for the purpose of having the funeral home make application for proceeds in order to pay the funeral expenses. Shortly after, the funeral home advised Peters that AIL denied coverage. Peters retained an attorney to assist her in collecting the policy.[1] This attorney stated that he was also a certified public accountant and that his practice consisted of estate planning. He said that he examined the policies and found nothing about them to indicate that they were not in force. On cross-examination he agreed that if the initial premiums were not paid on the policies then the policies would not have been in force.[2]

¶ 9 In addition, Peters presented an insurance executive. This witness testified that AIL had acted unreasonably by denying the claim. He further testified that the insurance documents sent to Deason and the information inserted in the application pertaining to the premiums all demonstrated that the policies' premiums had been paid.

¶ 10 AIL's position was that the premiums for both policies were not paid, so the policies never were in force. AIL's representative testified that the policies were sent to Deason by mistake. AIL's claims representative testified that when she was advised of Peters' claim, she checked company records for insurance. These records reflected that the premiums for the original life insurance and accident insurance policies had not been paid and she did not authorize payment of these two policies. However, a third policy for life insurance in the sum of $5,000.00 insurance had been issued and its premium paid, so she did authorize payment of policy proceeds.

¶ 11 AIL's position was also supported by its agent, Bowling, who testified that Deason's applications for the first two policies revealed a medical history which Bowling felt would prevent her from obtaining insurance. Bowling marked the applications "Trial App." and "Trial Application" for the purpose of ascertaining whether AIL would issue insurance and, according to him, the premiums were not paid at that time. Peters herself had no direct knowledge whether the premium was paid at that time and testified that her mother never told her whether she made payment when the applications were taken. These applications, complete with the markings, are the applications attached to the policies sent to Deason.

¶ 12 Evidence elicited by Peters on cross-examination of the claims representative established that AIL had no policy and procedures in place governing "trial applications." Moreover, AIL had loose control over mailing policies to insureds.

¶ 13 The evidence also included a letter from AIL to Deason concerning the first life insurance policy here in issue. The letter advised Deason that the policy would issue but at a higher premium. The modification attached to the life insurance policy is consistent with the advice in the letter. Deason also had the choice to decline the policy. According to AIL, Deason did in fact decline the policies, but purchased a third different life insurance policy. AIL paid the third

---

1. He testified at trial but did not participate as trial counsel.

2. The time lapse between the application date, August 12, 1996, and the purported effective date, November 14, 1996, is a period in excess of 90 days.

policy proceeds upon Deason's death and the policy is not in issue here.

¶ 14 The jury was provided a verdict form for breach of contract and a verdict form for bad faith. The jury returned a verdict of $500,000.10 for breach of contract and $44,060.00 on the bad faith claim. The record indicates a degree of confusion about whether the jury transposed the verdicts. Peters' counsel requested that the jury be given a special instruction and allowed to further deliberate. The trial court declined. Peters has not appealed. The matter was submitted for punitive damages and a verdict granting punitive damages was rendered by the jury for $500,000.00.

¶ 15 AIL filed a motion for new trial and for judgment N.O.V. Both were denied, AIL appeals.

¶ 16 Peters submitted a claim for costs and attorney fees. After a hearing, the trial court awarded costs of $7,965.12, prejudgment interest on the compensatory damages and the face amount of the insurance, and attorney fees of $241,425.00 for 807.75 hours at $300.00 per hour. AIL has supplemented its appeal to include the post trial awards.

## STANDARD OF REVIEW

¶ 17 As a general rule, a motion for new trial is addressed to the trial court's sound discretion and, absent error as to a pure and unmixed question of law, or arbitrary and capricious action, every presumption should be indulged in favor of the trial court's ruling on appeal. *Bennett v. Hall,* 1967 OK 122, ¶ 5, 431 P.2d 339, 340–41. An abuse of discretion involves a clearly erroneous conclusion and judgment, and one that is clearly against the logic and effect of the facts presented in support of and against the proposition in issue. *Oklahoma Tpk. Auth. v. Horn,* 1993 OK 123, ¶ 6, 861 P.2d 304, 306.

¶ 18 When reviewing an order on a motion for judgment notwithstanding the verdict, the reviewing court employs the same test used for a directed verdict. *McInturff v. ONG Transmission Co.,* 1970 OK 169, ¶ 9, 475 P.2d 160, 162. The question of whether the motion for judgment notwithstanding the verdict should have been sus-

tained depends upon whether a motion for a directed verdict, made at the close of all of the evidence, should have been granted. A trial court must consider as true all of the evidence favorable to the party against whom the motion is directed, AIL here, together with all inferences that reasonably may be drawn therefrom, and must disregard all conflicting evidence favorable to the movant. *Downing v. First Bank in Claremore,* 1988 OK 67, 756 P.2d 1227.

¶ 19 The underlying issues concern the trial court's rulings on evidence, the sufficiency of the evidence to support the verdict, the trial court's instructions to the jury, the verdict itself, and the award of attorney fees and costs. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1.

¶ 20 Review of jury verdicts proceeds under the following standard:

> In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, [an appellate court] will not disturb the jury's verdict or the trial court's judgment based thereon. Where such competent evidence exists, and no prejudicial errors are shown in the trial court's instructions to the jury or rulings on legal questions presented during trial, the verdict will not be disturbed on appeal. In an appeal from a case tried and decided by a jury an appellate court's duty is not to weigh the evidence and determine which side produced evidence of greater weight, i.e., it is not an appellate court's function to decide where the preponderance of the evidence lies— that job in our system of justice has been reposed in the jury. In a jury-tried case, it is the jury that acts as the exclusive arbiter of the credibility of the witnesses. Finally, the sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable

inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it.

*Florafax Int'l., Inc. v. GTE Mkt. Res., Inc.,* 1997 OK 7, ¶ 3, 933 P.2d 282, 287.

 ¶ 21 The tests on review of instructions given or refused are whether there is a probability that the jurors were misled and thereby reached a different conclusion than they would have reached but for the questioned instruction, or there was excluded from consideration a proper issue of the case. *Woodall v. Chandler Material Co.,* 1986 OK 4, ¶ 13, 716 P.2d 652, 654 (different conclusion); *VanWart v. Cook,* 1976 OK CIV APP 39, ¶ 9, 557 P.2d 1161, 1164 (different result or exclusion of proper issue).

A judgment will not be disturbed on appeal by allegedly erroneous instructions where *as a whole* they fairly present the law applicable to the issues raised by the pleadings and the evidence. *Smith v. United States Gypsum Co.,* Okla., 612 P.2d 251 (1980); *Bentley v. Hardin,* Okla.[App.], 577 P.2d 471 (1978). *Kimery v. Public Serv. Co. of Okla.,* 1980 OK 187, ¶ 19, 622 P.2d 1066, 1072.

 ¶ 22 When the appeal raises an issue of the reasonableness of any attorney fees awarded by the trial court, then the standard of review is whether there has been an abuse of discretion by the trial judge. The appellant must show that the trial court made a clearly erroneous conclusion and judgment, against reason and evidence, before such an award may be reversed. *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, 932 P.2d 1091; *Broadwater v. Courtney,* 1991 OK 39, 809 P.2d 1310; *Abel v. Tisdale,* 1980 OK 161, 619 P.2d 608; *State ex rel. Burk v. Oklahoma City,* 1979 OK 115, 598 P.2d 659; *In re Estate of Jack Lee Fields,* 1998 OK CIV APP 129, 964 P.2d 955.

3. *New York Life Ins. Co.* specifically limited its holding to the question of burden shifting and did not address whether delivery of the policy coupled with acknowledgment of premiums payment conclusively established the insurance contract. *New York Life Ins. Co.,* 1937 OK 311 at ¶ 6, 68 P.2d at 530.

## ANALYSIS AND REVIEW

### Judgment N.O.V.

¶ 23 AIL's motion for judgment N.O.V. was directed to the key elements of Peter's action, the merits of the insurance contracts, to her bad faith claims, and to the verdicts rendered by the jury on those claims.

 ¶ 24 This Court must find that there is an *entire absence* of proof on a material issue before reversing the decision to deny AIL's motion for judgment N.O.V. Only evidence favorable to the non-moving party may be considered. *First Nat. Bank in Durant v. Honey Creek Entm't. Corp.,* 2002 OK 11, ¶¶ 8, 15, 54 P.3d 100; *Franklin v. Toal,* 2000 OK 79, ¶ 13, 19 P.3d 834, 837.

¶ 25 With the above in mind, the various elements required to sustain AIL's motion for judgment N.O.V. are examined in subsequent paragraphs.

### 1. The Contract

 ¶ 26 The evidence, before this Court on review, shows Deason did receive completed insurance policies reflecting life and accident insurance contracts in force and initial premiums paid. This means that, at least, the burden of proving non-payment of the premiums shifted to AIL. *New York Life Ins. Co. v. Holroyd,* 1937 OK 311, ¶ 6, 68 P.2d 529, 530; *see In re Hughes,* 1954 OK 220, ¶ 6, 273 P.2d 450, 454.[3] Deason's death qualified her for payment of the life insurance and for the $40,000.00 accidental death benefit. AIL concedes that if the premiums were paid then contracts of insurance would be in force.[4] Because AIL's evidence of non-payment of the premiums must be disregarded at this stage of the analysis, the trial court properly denied its motion for judgment N.O.V. as to the contract claim.

4. It is unnecessary to discuss AIL's objection to the testimony from Peters' original attorney and from the insurance executive presented as experts. Both testified that coverage was in place. The content of policy documents, the fact of delivery of the policy documents to Deason, and the occurrence of a qualifying event, death and the undisputed fact of policy nonpayment were all before the jury.

## 2. Bad Faith

¶ 27 The bad faith tort was recognized in *Christian v. Am. Home Assurance Co.*, 1977 OK 141, ¶¶ 25–26, 577 P.2d 899, 904–05. There the Court adopted the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential damages and, in a proper case, punitive damages may be awarded. Tort liability may only be imposed where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of its insured claim.

¶ 28 The essence of the tort is the unreasonableness of the insurer's actions. When there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of an insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case. *Newport v. USAA*, 2000 OK 59, ¶¶ 10–11, 11 P.3d 190, 195–96; *McCorkle v. Great Atlantic Insurance Co.*, 1981 OK 128, ¶ 21, 637 P.2d 583, 587; *Alsobrook v. Nat'l. Travelers Life Ins. Co.*, 1992 OK CIV APP 168, ¶ 9, 852 P.2d 768, 770.

¶ 29 Thus, the question, presented here for purposes of the judgment N.O.V. review, is whether Peters' evidence demonstrated AIL's unreasonableness in that AIL failed to deal fairly and act in good faith. Again, under this standard, Peters' evidence was sufficient to establish the existence of contracts of insurance with initial premiums paid and that the insurance contract proceeds were not paid despite a qualifying event. The amount that the insurance contracts would pay is not in dispute.

¶ 30 Next, Peters' evidence included the testimony of an insurance company executive who opined that AIL acted unreasonably by denying the claim. AIL objected to this testimony by a pretrial motion *in limine*.

The witness based his opinion upon several factors: (1) AIL's lack of appropriate written procedures regarding delivery of policies, accounting for premiums received, and guidance for field agents pertaining to receiving premiums and completing applications; and, (2) AIL's departure from industry standards by noting payment of premiums on applications regardless of whether the premiums were actually paid.[5]

¶ 31 The first question is whether the testimony should have been admitted. The second question, assuming the testimony is admissible, is whether the testimony is probative on the issue of bad faith.

¶ 32 AIL's first objection argued that the witness would be giving an opinion on the credibility of AIL's witnesses. This did not occur. AIL next objected to the witness' testimony about whether the policies were in force, but that fact was established by other evidence, including AIL's cross-examination of Peters' original attorney.

¶ 33 AIL also challenged the testimony on the grounds of the witness' credibility and qualifications. The credibility of the witness was for the jury to resolve. The witness was qualified by Peters to testify regarding company procedures and industry standards. Last, AIL maintained that his testimony was unnecessary and prejudicial. The inner workings and procedures of an insurance company, or lack thereof, are not matters generally known to the average person.[6] AIL's assertion concerning prejudice when viewed in toto relates to the issue of whether the policies were in force.

¶ 34 Questions concerning the qualifications of expert witnesses and the admissibility of expert testimony are matters generally within the discretion of the trial court and will not be reversed unless an abuse of discretion is clearly made to appear. *Hall v. Globe Life and Accident Ins. Co.*, 1998 OK CIV APP 161, ¶ 7, 968 P.2d 1263, 1266.

---

5. The evidence established that this witness had taught insurance agents on how to take, handle, and process insurance applications and had written procedures concerning these matters.

6. This Court observes that evidence in this case was given showing that special training was given to AIL's personnel. Moreover, in some instances insurance company representatives and agents must be tested and licensed.

None of the objections herein were upon grounds sufficient to deny the testimony.

¶ 35 The next question is whether the testimony is probative of the bad faith claim. The testimony focused upon, and was critical of, AIL's procedures or lack of procedures which led it to deliver policies of insurance to Deason. The substance of the testimony may be restated as: AIL was negligent in regard to its internal procedures. This negligence led to the issuance and delivery of insurance policies to Deason. When AIL recognized its error it should have paid the policy proceeds notwithstanding the error, and its failure to do so was unreasonable behavior.[7]

¶ 36 *In short, AIL's failure to pay the claim had nothing to do with the claim itself, the cause or event (Deason's death by accident) giving rise to the claim, insurable interest, amount of the claim, or breach of policy conditions. Moreover, no evidence was presented tending to show that AIL delayed payment, tried to extort some unfair advantage or result by withholding payment, or even just ignored the claim.* The problem with Peters' position is simply that AIL's internal negligence in the management of its affairs was not directed in an intentional, malicious, or even reckless manner against Deason, as the insured, or Peters, as the beneficiary.

¶ 37 Here, the question of law for the trial court to determine was whether the jury *could* find, from the evidence presented, that AIL's conduct amounted to bad faith. *City Nat. Bank and Trust Co. v. Jackson Nat'l. Life Ins.,* 1990 OK CIV APP 89, ¶ 18, 804 P.2d 463, 468–69. There, the Court ruled:

We therefore hold that before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortuous. If the Trial Court so determines, the legal gate to submission to the jury of the issue of insurer's alleged bad faith conduct is open. However, until the facts, when construed most favorably against the insurer, have established what might be reasonably perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed. As elsewhere noted with regard to the tort of intentional infliction of emotional distress, 'It is for the court to determine whether on the evidence [insurer's tortuous conduct] can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.' (Citations omitted.)

¶ 38 This Court holds that the evidence here of AIL's internal negligence is not probative of the issue of bad faith. Bad faith and negligence are not synonymous. *See Myers v. Lashley,* 2002 OK 14, ¶ 22, 44 P.3d 553, 563. This leaves, as Peters' evidence, the mere fact that the policy proceeds were not paid after AIL informed her and her lawyer that the original premiums were unpaid.[8]

¶ 39 In *Christian,* the Court stated that the "essence of the cause of action is bad faith." In *McCorkle,* 1981 OK 128 at ¶ 21, 637 P.2d at 587, the Court described the tort as based on "the insurer's unreasonable, bad-faith conduct" including the unjustified withholding of payment. Thus, in *Christian* the Court reasoned that "in every insurance contract there is an implied covenant of good faith and fair dealing." *Christian,* 1977 OK 141 at ¶ 25, 577 P.2d at 904–05. There, elements of wilfulness, malice, and oppres-

---

7. Peters argues here that AIL concocted its "mistake" theory in an effort to cover its failure to pay and to create a legitimate basis for its failure to pay. No evidence exists to support a claim of "cover up." Peters' position infers, from the documentation, payment of the original premiums, but neither Peters nor any other witness or document could independently establish payment of the original premiums and also AIL could not establish they were not paid.

8. Peters originally processed the insurance through the funeral home responsible for her mother's funeral. The funeral home was told by AIL that the policies were not in force. On December 13, 1996, demand was made by Peters' original counsel by express mail. On December 14, 1996, AIL responded by letter explaining its position regarding nonpayment of the original premiums, the issuance of a substitute policy, and its payment under the substitute policy.

sion entered into the circumstances. The acts of the insurer were directed specifically toward the insured in an effort to avoid responsibility and conceal facts.

¶ 40 Under the *Christian* line of authority, the insurer's refusal to pay or delay in payment of insurance *alone* does not establish the tort liability. The tort of bad faith does not foreclose the insurer's right to deny a claim, resist payment, or litigate any claim to which the insurer has a legitimate defense. *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, ¶ 13, 824 P.2d 1105, 1109. The Court in *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, 681 P.2d 760, held that bad faith does not arise when there is a legitimate dispute and reiterated that the essence of the intentional tort of bad faith is the insurer's unreasonable bad faith conduct. The decisive question is whether the insurer had a "good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy." *Buzzard*, 1991 OK 127 at ¶ 14, 824 P.2d at 1109.

¶ 41 Here, the distinction comes about because there is a difference between unreasonable conduct toward Peters in the form of insurance contract nonpayment and AIL's internal negligence resulting in its potential liability on the contract.

¶ 42 In the former, the duty is to act in good faith and fairly when handling claims of insureds and beneficiaries. The duty is expressed in the form of an implied covenant that arises from the unique nature of the insurance contract and the special relationship between insurer and insured. *Rodgers v. Tecumseh Bank*, 1988 OK 36, ¶¶ 14–16, 756 P.2d 1223, 1226.

¶ 43 The legal effect of the internal negligence leading to AIL's issuance of the policies is to cause the burden to prove nonpayment of the original premium to shift to the insurance company. *New York Life Ins. Co.*, 1937 OK 311 at ¶ 6, 68 P.2d at 530. In the context of review of a decision to deny a motion for judgment N.O.V., the delivery of the policies by AIL showing payment of the

premium means that this Court *cannot* find that there is an *entire absence* of proof on the material question of whether the premium was paid.

¶ 44 However, the question of whether the premium was paid is only the beginning point in the bad faith cause of action. There, the inquiry also looks to the reasonableness of the conduct of the insurer in the matter of handling the claim. Here, Peters' evidence shows that AIL promptly investigated the claim and denied it for nonpayment of premiums. Whether the original premiums were in fact paid was a matter in dispute. The dispute was resolved against AIL by the jury after it had presented its defense in good faith for its asserted nonpayment which it had an unqualified right to do.

¶ 45 This Court finds that there was here an absence of proof concerning Peters' claim of bad faith. The trial court should have declined to submit the claim to the jury according to the process outlined in *City National Bank and Trust Co. v. Jackson National Life Ins.* Therefore, AIL's motion for judgment N.O.V. should have been sustained thereby also eliminating the punitive damages award in favor of Peters.[9]

### Jury Instructions Pertaining to Breach of Contract

¶ 46 The trial court's jury instructions included O.U.J.I.-CIV 23.3, form of contracts as oral or written, O.U.J.I.-CIV 23.8, requirement of consideration, and, O.U.J.I.-CIV 23.22, performance of conditions precedent. AIL asserts that these instructions were inaccurate and ambiguous.

¶ 47 O.U.J.I.-CIV 23.3 employs the term "oral contracts" and here there was no contention that an oral contract was involved. However, when viewed as a whole, the instructions did advise the jury that the issue before it was the existence of a written contract consisting of the disputed insurance policies.

¶ 48 O.U.J.I.-CIV 23.8, as given, instructed the jury that a promise will be enforced only if consideration is present. The trial court

9. This conclusion renders unnecessary consideration of errors relating to jury instructions on

bad faith and the claim for punitive damages, a claim dependent upon bad faith for its basis.

then instructed that if the jury finds "that Reba Deason paid the premium" then it should find that the element of consideration is satisfied. AIL argues that this is confusing because the issue is whether the "initial" premium was paid. Moreover, evidence was elicited at trial showing that attempts were made to tender premium installments after Deason's death.

¶ 49 AIL's substitute instruction specifically instructs the jury about the initial policy premiums. However, again the statement of the case instruction leaves no doubt that the issue at the heart of the case is payment of the initial premiums.

¶ 50 O.U.J.I.-CIV 23.22, as given, instructed the jury about what it could consider to determine Deason had paid the insurance premium as a condition precedent to AIL's duty to perform its side of the contract. AIL's argument is that the instruction permitted the jury to decide *whether* payment of the premium was a condition precedent when it was undisputed that if the premiums were not paid then there would be no insurance in force.

¶ 51 The Notes on use of the instruction state:

> This Instruction should be used when there is a jury question concerning a condition precedent to a party's performance. If the question is whether the condition did in fact occur, the court should give the first paragraph along with a charging instruction with respect to that factual question. The second paragraph is intended for cases where the jury is called upon to determine whether a term in a contract is a condition precedent to a party's performance.

¶ 52 Thus, AIL is correct insofar as the use of the second paragraph of the Instruction, because the payment of the initial premiums was clearly a condition precedent to AIL's obligation to perform under the policies of insurance. However, the question here is whether this error requires this Court to set aside the judgment.

¶ 53 A judgment will not be reversed by reason of error which does not affect the substantial rights of the party. 12 O.S.2001, § 78. Here, the instruction did not exclude the issue of the need to find a payment of the initial premiums. The statement of the case emphasized this issue for decision. Last, as discussed above, the jury can conclude from the evidence and the shifting of the burden of proof resulting in AIL's failure to establish nonpayment, that the initial premiums were paid. Thus, AIL has failed to show here how or even that the outcome has been affected by inclusion of the second paragraph of the instruction.

¶ 54 This Court finds no reversible error based upon the jury instructions.

### The Verdict Forms

¶ 55 The jury returned two verdict forms. One of the forms was for breach of contract with damages of $500,000.10. The other was for bad faith and assessed damages as $44,060.00. The sum of $44,060.00 clearly is the sum of the amount due from the combined amount of the two policies.

¶ 56 Peters would have this Court ignore the two verdicts and treat the jury's decision as a unit, thus assessing damages for breach of contract and bad faith. AIL argues that the verdicts are fatally flawed, that the breach of contract damages clearly are not $500,000.10 under any view of the evidence, and that the verdicts cannot be corrected. AIL's suggested alternative is to order a remittitur of the breach of contract award to $44,060.00 and to deny recovery for bad faith.

¶ 57 The more recent decisions of the Oklahoma Supreme Court characterize the bad faith/breach of contract action as a single cause of action with component elements and multiple potential bases for damages.[10] *Taylor v. State Farm*, 1999 OK 44, ¶ 9, 981 P.2d 1253, 1257–58. Therefore, in light of these decisions and of the fact that this Court has ruled herein that only the breach of contract action may be and will be affirmed, the correct resolution of this matter is to reduce the

---

10. *EKE Builders, Inc. v. Quail Bluff Associates*, 1985 OK CIV APP 46, ¶ 21, 714 P.2d 604, 608–09, suggests that two causes of action are presented but such suggestion is clearly contrary to the later pronouncements of the Supreme Court.

judgment in favor of Peters to the sum of $44,060.00. This sum represents the total due on the two contracts of insurance, exclusive of the third contract which AIL has already paid.

## Costs

¶ 58 As prevailing party, Peters is entitled to recover costs. 12 O.S.2001, § 928; 36 O.S.2001, § 3629(B). The prevailing party is the one who has judgment rendered at the conclusion of the action. *Oklahoma Oil & Gas Exploration Drilling Program 1983–A v. W.M.A. Corp.*, 1994 OK CIV APP 11, ¶ 14, 877 P.2d 605, 611. However, the scope of what may be recovered as costs is limited by statute. 12 O.S.2001, § 942; *Ashby v. Harris,* 1996 OK 70, ¶ 7, 918 P.2d 744, 747.

¶ 59 Peters asked for costs of $8,969.37. Peters submitted an affidavit itemizing costs in categories of court costs, deposition expenses, copies and copying of papers for trial, and travel and lodging in connection with depositions of out-of-state witnesses.

¶ 60 After the close of the hearing on costs and attorney fees, the trial court took the matter under advisement. Subsequently the trial court awarded costs of $7,965.12 as "statutory costs." The components of that sum were not listed and the sources of the deductions from Peters' claim also were not listed. However, Peters' costs included $1,004.25 as travel and lodging expenses associated with deposing witnesses. This expense is not allowed as costs. *Ashby,* 1996 OK 70 at ¶ 9, 918 P.2d at 747. Deduction of that sum from the total claimed by Peters results in the amount awarded by the trial court. This Court concludes that the trial court deducted the claimed travel expenses and further finds that the deduction is proper.

¶ 61 AIL's appeal asserts that the trial court erroneously included photocopy expense, travel expenses related to deposing out-of-state witnesses, and six depositions not used at trial, so that the correct costs to award amounts to $4,371.14. AIL does not state here how it calculated that sum.[11] However, it clearly appears, as stated above, that the trial court did deduct the travel expenses.

¶ 62 The cost of photocopies or papers "necessarily" used at trial is included as recoverable costs. 12 O.S.2001, § 942(4). The authorized charge is either the amount authorized by law or ten cents per page. Here, AIL has failed to show where, if at all, the trial court erroneously added amounts or calculated costs for photocopies.

¶ 63 Peters' claim includes materials from the State Insurance Commissioner, including invoices charging sums authorized by law for copies of documents on file in that office. Peters' invoices also show payments for copies of exhibits. AIL has not demonstrated that the trial court committed error by including the costs claimed for necessary papers.[12]

¶ 64 The cost of depositions is included in Section 942, unless the trial court finds that the deposition was neither reasonable nor necessary. 12 O.S.2001, § 942(6). The per page cost of transcribing the depositions is not in controversy here.

¶ 65 The trial court made no finding that any of the six challenged depositions were unnecessary. However, this Court notes that AIL's objection to fees and costs raised

---

11. AIL objected to the deposition of Penny Reese. Peters' summary of costs listed that deposition, along with two others not included in AIL's objection for a total of $2,321.80. A back-up invoice shows that the Reese deposition cost $564.90. AIL objected to the depositions of Larry Genesser, Katheryn Brown, Randall Mull, Cynthia Saucedo, and Gary Chartier. Peters' summary of costs included these depositions, along with one for a Linda Alleman and not the subject of AIL's objection, for a total of $2,421.00. The Alleman deposition was invoiced at $859.00. Elimination of the AIL amounts, results in court costs of $426.08, papers for trial of $625.60, and depositions of $3,775.15, for a total of $4,496.13.

12. AIL argued before the trial court that the papers from the Insurance Commissioner consisting of the financial records of AIL were not used at trial. District Court record p. 1593 at 1602–03. However, the parties reached a stipulation during trial, before the punitive damages issue was submitted to the jury, which eliminated the necessity of the documents.

that issue.[13] The appellate court does not make first instance determination of disputed factual issues. *Bivins v. State ex rel. Okla. Mem. Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464. Therefore, the case must be remanded for a determination of whether taking of these six depositions was necessary and reasonable.

## Prejudgment Interest

¶ 66 AIL concedes that prejudgment interest is proper as to the policy proceeds amount of $44,060.00.[14] That sum is the amount remaining as a consequence of this Court's decision and, therefore, the remaining prejudgment issues are moot.

## Attorney Fees

¶ 67 As prevailing party, Peters is entitled to recover a reasonable attorney fee. 36 O.S.2001, § 3629(B). The issue here is whether the fee awarded was reasonable.

¶ 68 Because this Court has made disposition of issues different from that of the trial court, a redetermination of reasonable attorney fees must be made by the trial court on remand. The criteria for calculation of fees are set out in *Burk*. In order to calculate a just, equitable, and fair fee, including the allowable expenses, the trial court must first compute, on the record, the lodestar fee.

¶ 69 Then, pursuant to *Burk*, the trial court may consider additional factors, as applicable, to arrive at the final fee and allowed expenses, that the trial court deems just, equitable, and reasonable. This process decides whether the lodestar fee will be increased or enhanced. Enhancement is tied, by definition, to the court's award of attorney's fees as an upward adjustment of the calculated lodestar figure. *Oklahoma Bar Assoc. v. Weeks*, 1998 OK 83, ¶ 21, 969 P.2d 347, 353. The final calculation of the compensatory fee must bear some relationship to the amount in controversy. *Arkoma Gas Co.*

*v. Otis Eng'g. Corp.*, 1993 OK 27, 849 P.2d 392; *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186.[15]

¶ 70 Where a lawsuit consists of related issues or claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

¶ 71 This Court recognizes that a lodestar fee may be unreasonably high or unreasonably low. *Southwestern Bell*, 1987 OK 16 at ¶¶ 10–12, 737 P.2d at 1188; *Burk*, 1979 OK 115 at ¶ 7, 598 P.2d at 660–61. The time and labor spent by the attorney in performing services for which compensation is sought is an important factor to be considered in setting a reasonable fee. However, the time element must be considered in connection with other factors. Fees cannot fairly be awarded on the basis of time alone. *Southwestern Bell*, 1987 OK 16 at ¶ 14, 737 P.2d at 1188–89; *Burk*, 1979 OK 115 at ¶ 7, 598 P.2d at 660–61; *RJB Gas Co. v. Colorado Interstate Gas Co.*, 1989 OK CIV APP 100, ¶ 67, 813 P.2d 1, 13–14, where the Court reasoned as follows:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult dividing the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discreet claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully-compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in

---

**13.** District Court record, p. 1593 at 1602–03.

**14.** AIL Brief at 29.

**15.** The *Arkoma Gas* case demonstrated that the criterion serves as a check against an unfair result from a simple mathematical calculation. *Southwestern Bell* used the criterion to review whether a case was "overworked."

some cases of exceptional success, an enhanced award may be justified.

¶ 72 On remand the trial court shall determine the proper amount of the attorney fee award in light of these standards. The final calculation, and the supporting findings, shall also be set forth in the judgment.

## SUMMARY

¶ 73 The burden of proof on the question of payment of the original premiums shifted to AIL because it issued policies of insurance which indicated such payment. The jury's verdict on that point is conclusive. Judgment N.O.V. is not available to AIL because there is evidence supporting the verdict due to the issuance of the policies. The trial court's jury instructions on the contract issues do not contain reversible error.

¶ 74 The trial court judgment based upon the bad faith claim must be reversed, also eliminating punitive damages, because there is no evidence on which the trial court could conclude that AIL's conduct could reasonably be perceived to be tortious. AIL's internal negligence resulting in issuance of the insurance policies is distinguishable from the sort of conduct condemned as a breach of the covenants of good faith and fair dealing in handling of claims.

¶ 75 There is a single cause of action. Here, the bad faith component has been eliminated leaving only the damages following from breach of the insurance contracts. These damages amount to the face amount of the two policies under the evidence. Therefore, the judgment in favor of plaintiff is modified to the sum of $44,060.00.

¶ 76 As prevailing party, Peters is entitled to costs and attorney fees. The costs claimed were properly reduced by the trial court to eliminate travel expenses related to taking of depositions. However, the trial court did not address AIL's claim that several depositions, not used at trial, were unnecessary and unreasonable. The trial court must make the initial determination on this point, and, with that exception, the trial court's assessment of costs is affirmed. In light of the disposition of the issues set out herein, the trial court's award of attorney fees must be remanded for redetermination.

¶ 77 Therefore, the trial court judgment is modified and affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

¶ 78 MODIFIED AND AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

GOODMAN, J., concurs, and COLBERT, P.J., concurs in part and dissents in part.