273 P.2d 450 (1954)
In re HUGHES.
HUGHES et al.
v.
STATE INDUSTRIAL COMMISSION et al.
No. 36336.
Supreme Court of Oklahoma.
July 13, 1954.
Rehearing Denied August 10, 1954.
*451 Frantz C. Conrad, Oklahoma City, for petitioners.
Mac Q. Williamson, Atty. Gen., Richard M. Huff, Asst. Atty. Gen., for State Industrial Commission.
Mont R. Powell and Sam Hill, Oklahoma City, for State Ins. Fund.
BLACKBIRD, Justice.
After trial upon the claim filed in the State Industrial Commission by plaintiff in error Violet O. Hughes, as claimant, for compensation on account of the death of her husband, A.M. Hughes, in the course of his employment by Butter Nut Baking Company, Hugo, Oklahoma, said Commission entered an award for her and the couple's two sons, co-administrators of the decedent's estate, as petitioners, of $13,500, against said Banking Company, but dismissed the claim against its insurance carrier, State Insurance Fund. Said petitioners have perfected the present appeal as plaintiffs in error, from said latter portion of said order, on the theory that the award should have been made against the insurance carrier as well as the respondent. As the present appeal concerns only the question of the insurance carrier's liability and the baking company has filed no brief, the State Insurance Fund and the petitioners will be referred to as appellee and appellants, respectively.
At the time appellee issued its first joint policy of Workmen's Compensation Insurance to them, and for several years prior to August 30, 1952, A.M. Hughes operated both Butter Nut Baking Company and Hugo Furniture Company as sole owner, but on the latter date, both companies were incorporated. In accord with its customary procedure in such matters, appellee upon issuance of the original policy, obtained from said insured companies, or one of them, a payment or deposit into their account with said insurer of a sum sufficient to defray the costs of the estimated quarterly premiums on said policy for a year in advance. Thereafter, at the end of each quarter, the insured forwarded to appellee's office at Oklahoma City, on forms provided and partially filled out by that office (as to policy number, name and address of the assured, and the classes of employees engaged in the businesses, together with the premium rate for each class) a payroll report, setting forth the sum of salaries they had paid their employees in certain classifications, which in this case were denominated: "bakeries", "furniture stores-wholesale or retail", and "clerical". On the basis of those quarterly reports, appellee's office staff computed the proper quarterly premium for the policy and billed the insured companies for it. Upon receiving such statement, the insured would then mail to appellee's office their money remittance for the amount of the premium thus shown to be due. Upon the expiration of one annual policy, appellee would send a representative from its office to make a "Final Audit" (as to that policy) of the insured' payroll records to ascertain if they had paid the correct premium for the term of the policy. If such audit showed that it had not, the insured would then be either credited with, or billed for, the difference between the premium they had paid and the correct premium due. The annual policies issued to these companies contained provisions permitting appellee, *452 at any time during the "Policy Period" and within a period of one year according to one policy, and three years according to the most recent one, after their final expiration, to examine the employers' books in so far as they related to the remuneration paid their employees. In the manner outlined, appellee kept sufficient of the insureds' funds on advance deposit to defray the premium found to be due at or after the end of each quarter and to protect it upon expiration of an old policy, in issuing a new or successor one, which it customarily mailed to its insureds 30 days or more in advance of the expiration date of the old one, without any application or request therefor. It was in accord with this customary procedure that appellee, on or about February 18, 1953, mailed to Butter Nut Baking Company and Hugo Furniture Company, as the insured employers, its policy No. 14838, to cover a one-year term beginning April 1, 1953, and ending April 1, 1954. The policy had been filled out in appellant's office, using as a guide the old policy, No. 13308, issued for the preceding one-year period, April 1, 1952, to April 1, 1953, and consequently it, like the old policy, again described the "Employer" as an: "Individual  A.N. Hughes" rather than showing the employer companies as corporations, which they had been since August, 1952, though the only difference between their corporate names and the names under which they had been operated by Hughes individually was the abbreviation: "Inc.", which followed immediately after the word "Company". This was the situation with regard to the policy at the time that an explosion occurred in Butter Nut Baking Company's bakery, June 21, 1953, killing Hughes and starting a fire which totally destroyed the bakery, and, along with it, said baking company's books and records.
At the Industrial Commission's hearing on the death compensation claim filed by Hughes' widow, it was appellee's position that under its Policy No. 14838, in force at Hughes' death, he was one and the same employer as Butter Nut Baking Company, and that said policy did not cover him as an employee. Certain members of appellee's office force were called as witnesses to show, among other things that said Insurer had never had any formal notice that the Baking Company had been incorporated and that, as far as appellee knew, Hughes was its owner rather than one of its employees. On the other hand, despite the fire's destruction of the company's records, appellants were able to show by enlarged photographs of its bank's microfilm that the last quarterly premium on its preceding Workmen's Compensation Policy No. 13308, had been paid by a check dated April 18, 1953, drawn on the bank account of "Butter-Nut Baking Co., Inc." Also, it was shown by Claimant's Exhibit "B-1" that as early as August, 1952, appellee's office had issued receipt to "Butter-Nut Baking Co., Inc.", for a premium remittance on Policy No. 12084, that was the predecessor to No. 13308, and covered the period from April 1, 1951, to April 1, 1952. Furthermore, respondents' "Exhibit D", which is a payroll report filed by A.M. Hughes and dated April 18, 1953, indicates that when it was received at appellee's office, it had the abbreviation: "Inc" added in handwriting to the name of the insured "Butter Nut Baking Company" as originally typed on the report from when mailed out to said company for completion and return. In addition to such evidence, it was further shown by testimony of the baking company's bookkeeper, who assisted one of appellee's auditors in making his final audit on Policy No. 13308, that she referred to Hughes as President of the corporation when the auditor was inquiring of her as to the duties of his son as vice-president.
In paragraph "-5-" of the findings incorporated in its order, the Commission found that the policy in question was in effect as to all employees of Butter Nut Baking Company, except A.M. Hughes, notwithstanding the fact the policy described said company as individually owned rather than as a corporation "since the payroll declared and the premium paid thereon" covered them. The same paragraph contains the further finding that "the payroll declared on * * * did not include the salary of the decedent, A.M. Hughes, President of the Corporation." This finding *453 apparently constituted the sole basis for the Commission's conclusion that Hughes was not covered "by said policy within the agreement of the parties thereto", and its consequent denial of any liability on the part of appellant in the matter of Hughes' accidental death.
In attempting to support such denial of its liability to the corporation, Butter Nut Baking Company, Inc., for the death of its President on account of this policy issued to Butter Nut Baking Company as individually owned, appellee cites principles to the effect that liability under such a contract must be governed by the terms of the contract actually in effect, and cannot be predicated on a policy or contract fabricated or re-written for the parties thereto by the Court, but it finds no particular fault with the Commission's extension of the policy's coverage to whatever employees were included in the premium paid by the baking company (regardless of whether it was a corporation or was individually owned). And, under the statute governing such matters, 85 O.S. 1951 §§ 65.2, 65.3, as cited and interpreted in Barney U. Brown & Sons v. Savage, 208 Okl. 668, 258 P.2d 183, and other previous decisions of this Court, we do not think that any valid objection could be made to such theory of coverage. See Tri-State Casualty Ins. Co. v. Bowen, 189 Okl. 97, 113 P.2d 981. We think the evidence to which we have briefly alluded was sufficient to show that respondent had notice that Butter Nut Baking Company was a corporation, and to estop it to deny that Policy No. 14838 insured said company as such.
Counsel for appellants call our attention to paragraph "Five" appearing on page 2 of Policy No. 14838, and asserts that, according to the plain wording thereof, there was no obligation on the part of the baking company either to include Hughes' salary in the total sum of bakery salaries upon which the premium on said policy was to be figured, or to pay a premium on said salary. We observe, however, that in the endorsement attached to the policy as page 4, there is a paragraph numbered "9" which says: "If this employer is a corporation * * * the entire remuneration of the president and other executive officers * * * shall be disclosed and premium shall be paid thereon, subject to" a minimum and maximum weekly remuneration specified therein. Whether or not said paragraph "9" of the last page was intended to amend or supersede paragraph "Five" of the foregoing page, does not appear clear and is not resolved in the argument, but as we see it, this is not a crucial question in the present controversy. The underlying crux of the matter, as we see it, is that according to the system of payroll reporting and auditing and payment of premiums on appellee's policies, such as the one in question, the specific amount of premium due thereon is not ascertained or definitely fixed until the policy has been in force and effect for a quarter of a year, and under such system, the premium due thereon may vary from one quarter to the next. As hereinbefore noted, there are sufficient of the insureds' funds deposited in advance to protect appellee in this system of "retroactive" reporting and payment. It was stipulated that at the time of the explosion, there was such advance premium in the amount of $221 of the insureds' money to their credit in their account with appellee (which sum appears amply sufficient) to cover any premium that would accrue, but on the date of the explosion had not fully accrued or been determined, for the first quarter of the term (April 1, 1953 to April 1, 1954) of Policy No. 14838. We have found no unequivocal documentary evidence or testimony of requisite probative value to establish that Hughes' salary was not included in the salary totals reported to appellee by the payroll report dated April 18, 1953, for the last quarter of Policy No. 13308, which said report was approved by appellee's auditor after the customary personal check at Hugo of the bakery's records on one of his field trips or itineraries, a few days before the explosion. Whether there was evidence reasonably tending to support a conclusion that Hughes' salary was not included in that report is doubtful, but, even if it be assumed that there was sufficient evidence, *454 could it be presumed on the basis thereof, that such salary would not have been included in the salary total that the insureds would have shown on the first quarterly payroll that would not have been forthcoming or due under Policy No. 14838, until more than a month after the explosion, or that upon a subsequent "Final Audit" for the purpose of verifying the amount of said premium, appellee would not have seen to it that such salary was figured into the amount with which said insureds' account in its office was debited, and a proper deduction made from the afore-specified advance premium on deposit in its office? We think not. That would be presuming that the terms of the policy (if paragraph "9" of Policy No. 14838 supersedes paragraph "Five", so that Hughes' salary was to be included in the salary total on which the premium was to be computed, which hypothesis we are assuming without deciding) would not have been complied with, and that neither the baking company nor the appellee would have discharged its duties thereunder. Such a presumption cannot correctly be indulged in. We therefore hold the proof insufficient on the question of inclusion of Hughes' salary in the future premiums to be paid on Policy No. 14838. Such "non-inclusion" or failure to report, like the issue of non-payment, was a part of appellee's defense to liability under the policy, and, especially in view of the admitted payment of the advance premium, was its burden to prove. See New York Life Ins. Co. v. Holroyd, 180 Okl. 208, 68 P.2d 529, 29 Am.Jur. "Insurance" 2d, 1436, and other cases cited in the notes thereto. That appellee failed to discharge said burden in this case cannot be seriously questioned.
In its brief, appellee again makes the contention, previously made in a motion to dismiss this appeal, that since appellants recovered against Butter Nut Baking Company, Hughes' employer, the full amount of $13,500, to which any claimant is entitled under the death benefits provisions of our Workmen's Compensation Law, they are not "aggrieved" parties under Rule 48 of this Court concerning such appeals. (See p. 703, Vol. 1, O.S. 1951, and p. 117 of pock. supp., to the O.S.A. Volume covering 12 O.S. §§ 951-1140). Appellants counter by pointing out that the bakery has been completely destroyed and they represent that there will be few, if any, assets of said company left with which to pay or satisfy such an award (there being no direct proof on the latter subject except the fact of the fire and explosion). However, there is no reason to enter the realm of speculation as to this, for, though the question presented has never yet been decided by this Court, there is ample persuasive precedent outside this jurisdiction for holding contrary to appellee's contention. See Associated Theaters v. Industrial Accident Comm., 57 Cal. App. 105, 206 P. 665. We think that, under the proper interpretation of our Workmen's Compensation Law, which we are bound to liberally construe in favor of the employee, when the protection of industrial insurance contemplated in the Act is denied such employee by a final order of the State Industrial Commission he certainly is an "aggrieved" party within the meaning of the cited rule. See Peterson v. Department of Labor and Industries, 22 Wash.2d 647, 157 P.2d 298.
In accord with the foregoing views, that part of the Industrial Commission's order appealed from, which purports to dismiss the claim as against appellee, State Insurance Fund, is reversed and set aside with directions to said Commission to amend said order to render its award a joint one against said Fund and Butter Nut Baking Company, a corporation.
As thus amended and modified, it is sustained.