2001 OK CIV APP 123

**STATE INSURANCE FUND, Petitioner,**

v.

**Terry Roy DUNN, Jr., Papa Geppetto's Pizza and Grill, Hamid Rahaman, and the Workers' Compensation Court, Respondents.**

No. 95,074.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 13, 2001.

Rehearing Denied May 8, 2001.

Certiorari Denied Sept. 13, 2001.

Barry Zlotogura, Edmond, OK, for Petitioner.

Gary G. Prochaska, Foshee & Yaffe, Oklahoma City, OK, for Respondent Terry Dunn.

COLBERT, Judge:

¶1 Petitioner, State Insurance Fund (the Fund), seeks review of an order of the workers' compensation trial court awarding disability benefits to Claimant, Terry Dunn. The issue presented for review is whether the trial court erred in finding that, at the time of Claimant's injury, the Fund had an insurance policy in full force and effect covering Employer, Papa Geppetto's Pizza and Grill (Papa Geppettos). We find that the court did err and vacate its order.

## BACKGROUND

¶2 This case involves an award of temporary total and permanent partial disability benefits for an injury sustained by Claimant while delivering pizza for Papa Geppetto's. Because we are concerned only with the issue of the insurer's liability, it is unnecessary to describe the nature and extent of Claimant's injury.

¶3 In July 1999, Claimant began working for Geppetto's Pizza and Grill (Geppettos), which was owned by Saeid Moghbel. At the time Claimant was hired, Moghbel had a contract for workers' compensation insurance with the Fund.[1] In September or October of that year, Claimant left Geppettos.

¶4 In late November 1999, Moghbel sold his establishment to Hamidur Rahaman,[2] who named the business Papa Geppetto's. Later that month, Claimant returned to his job.[3]

¶5 Claimant's injury occurred on December 4, 1999. On December 7, the Fund sent a notice to Geppetto's that its insurance policy would be cancelled on December 20, 1999.[4]

---

1. The Fund has argued that it insured Geppetto's as a sole proprietorship. However, in an addendum to the application for insurance, Moghbel stated that the business was a partnership owned in equal shares by himself and Farizi Mohamad. There do not appear to be any other references to Mohamad in the record, and, therefore, we will refer to the owner of Geppetto's as Moghbel.

2. Hamidur Rahaman's first name was apparently misspelled in the trial court order.

3. Claimant argues in his response brief that he was continuously employed throughout November and December 1999. However, his testimony at the hearing was that there was a break in his employment, and that he returned to his job after the business had been sold.

4. This notice was in compliance with 85 O.S. Supp.2000 § 64(G), which requires that an insurance carrier give at least 10 days notice to the insured before it cancels the policy.

The stated reason for the cancellation was that "Policyholder is out of business."

¶ 6 Claimant filed a Form 3 on December 20, and a hearing was held on July 10, 2000. At the hearing, the Fund argued that Geppetto's and Papa Geppetto's were distinct business entities, and that, because it had issued a policy only to Moghbel as the owner of Geppetto's, and not to Rahaman, it did not have an insurance policy in force and effect which covered Papa Geppetto's at the time of Claimant's injury. Claimant and Rahaman argued that the two entities were the same.[5]

¶ 7 In an order filed July 14, 2000, the trial court made the following findings:

–2.–

THAT claimant was an employee of Geppetto's Pizza and Grill a/k/a Pappa Geppetto's located at 1225 S.W. 59th Street, Oklahoma City, Oklahoma.

\* \* \*

–9.–

THAT the STATE INSURANCE FUND had issued a workers' compensation policy covering the pizza business located at 1225 S.W. 59th, Oklahoma City, and that said policy was in full force and effect on or about DECEMBER 4, 1999, date of claimant's work related accident.

–10.–

THAT PAPPA GEPPETTO'S PIZZA AND GRILL/STATE INSURANCE FUND is ordered to pay claimant the award herein in lump sum of $7,316.00.

¶ 8 The trial court subsequently issued an order *nunc pro tunc* correcting the previous order to reflect that, on the date of the hearing, the Fund had been represented by counsel. The order otherwise remained in effect. The Fund now seeks this court's review.

STANDARD OF REVIEW

¶ 9 Because the material facts are not in dispute, we are presented with a question of law. *Lanman v. Oklahoma County Sheriff's Office,* 1998 OK 37, ¶ 6, 958 P.2d 795, 798. Therefore, our review is de novo. *Clayton v. Fleming Cos.,* 2000 OK 20, ¶ 11, 1 P.3d 981, 984. *See also McCarter v. Rainbo Baking Co.,* 1998 OK CIV APP 78, ¶ 5, 964 P.2d 918, 919 (quoting *Oklahoma Petroleum Workers' Compensation Ass'n v. Mid–Continent Cas. Co.,* 1994 OK CIV APP 107, ¶ 5, 887 P.2d 335, 337, *overruled on other grounds by Southwest United Indus. v. Polston,* 1998 OK 78, 964 P.2d 210 ) ("[i]t is well established that defining the law is the role of the appellate court; thus, 'it independently reviews questions of law.' ").

DISCUSSION

¶ 10 Based upon the evidence presented, there is no question that Geppetto's and Papa Geppetto's are distinct business entities. The record contains county beverage permits obtained by both Moghbel and Rahaman. Moghbel's permit, dated November 13, 1995, lists the name of his establishment as "Geppetto's Pizza and Grill." Rahaman's permit, dated February 15, 2000, states that the name of his business is "Papa Geppetto's Pizza and Grill." Moreover, although Rahaman argued that the two entities were the same, he also testified that he purchased the entire business from Moghbel. There is no evidence in the record that Moghbel continued to be involved in the operation of the business after he sold it to Rahaman.

¶ 11 That there were two distinct entities is particularly relevant. In order to impose liability upon an insurance carrier, there must be a relationship in existence between the insured and the claimant at the time of claimant's injury. *See Alliance Temp. Servs., Inc. v. McGehee,* 1991 OK CIV APP 129, ¶ 4, 822 P.2d 692, 693. The record in this case reveals that Claimant returned to work and sustained an injury *after* the sale of

---

5. Rahaman's testimony, however, is somewhat suspicious. For example, he denied that Claimant worked for him and that he even knew Claimant, despite the fact that Claimant had proven his employment with W–2 forms. The trial court ultimately concluded that Rahaman was not a credible witness.

the business and change in ownership. Thus, at the time of his injury, he was clearly an employee of Papa Geppetto's, not Geppetto's.

¶ 12 What we must determine, then, is whether the insurance policy between the Fund and Moghbel continued in force subsequent to the sale of the business and change in ownership. An early case involving a similar issue is *Tri–State Casualty Ins. Co. v. Bowen,* 1941 OK 201, 113 P.2d 981. There, the claimant sustained an injury after his employer, a co-partnership, underwent a partial change in ownership and was transformed into a corporation. One of the issues decided by the court was whether the workers' compensation insurance policy issued to the co-partnership remained in effect after the partial change in ownership and the transition of the entity from a co-partnership into a corporation.

¶ 13 The court held that the policy did remain in effect. *Id.* at ¶ 27, 113 P.2d at 986. The court reasoned that the insurer's agent had notice of the transformation, and notice to the agent constituted notice to the insurer. The court further reasoned that the insurer failed to cancel the policy after it had been notified of the transformation of the business and the change in ownership. *Id.*

¶ 14 Despite the court's holding in *Bowen,* we find the factors it relied upon to be instructive. Unlike the insurer in *Bowen,* the Fund did not allow the policy to continue after it had been put on notice. On the contrary, it is apparent that the Fund acted to cancel the policy when it discovered that Moghbel had gone out of business. Moreover, it is significant that, in *Bowen,* the business entity underwent only a *partial* change in ownership, and the new owner had been one of the original partners. Here, however, there has been a *complete* change in ownership.

¶ 15 Another important factor in determining whether an insurer may be held liable after a change in ownership or sale of a business is whether the insurer continued to accept premiums paid for the injured worker. In *In re Hughes,* 1954 OK 220, 273 P.2d 450, the court held that an insurance carrier could be estopped to deny coverage where it retained premiums paid by a corporation which had previously been an individually owned company.

¶ 16 In *Alliance Temporary Services,* 1991 OK CIV APP 129, 822 P.2d 692, the State Insurance Fund attempted to deny liability for the claimant's injury by arguing that the claimant was not employed by the insured at the time of the injury. The court held that, because the Fund accepted premiums paid on the claimant, it was estopped to deny coverage. *Id.* at ¶ 4, 822 P.2d at 693.

¶ 17 In the instant case, the record is silent as to whether any premiums were paid for the period during which Claimant sustained the injury. We will not assume that premiums were paid. *See Newton v. Newton,* 1998 OK CIV APP 24, ¶ 7, 956 P.2d 934, 936 (appellate court will not assume anything from a silent record). We find the evidence sufficient to show that the policy did not continue in force after Moghbel sold the establishment to Rahaman.

¶ 18 There are additional factors which influence our decision. First, by his own admission, Rahaman did not have an insurance policy in effect covering Papa Geppetto's. His testimony on this point was as follows:

Q. You don't have Workers' Compensation coverage, do you?

A. Because it is a family business.

\* \* \*

Q. You did not buy any Workers' Compensation policy on your own, did you?

A. No.

Q. And you haven't purchased one since this one lapsed?

A. I have no idea.

Q. You don't know if you bought a Workers' Compensation policy?

A. No, somebody told me with family business never bought Workers' Compensation.

What we are able to discern from this testimony is that, although Rahaman had a misconception about workers' compensation insurance, he was at least aware of it and was

under the impression that there was no policy in effect covering Papa Geppetto's.

¶ 19 Next, when the Fund entered into a contract with Moghbel, it did not agree to assume the risk as to the second employer. The policy issued to Moghbel contained the express language, "Your rights and duties under this policy may not be transferred without our written consent." Claimant argues that "This point is rendered moot because it was the business, Geppetto's, that was covered under the policy." However, the policy also contains the language, "If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured." Thus, it is clear that the policy covered the owner.

¶ 20 On the issue of transfer of the policy, both parties have cited *Employers' Liability Assurance Corporation v. Showalter,* 1935 OK 1199, 52 P.2d 1060. In *Showalter,* an insurance policy had been issued to four partners, three of whom subsequently assigned their interests to the fourth partner. The claimant was injured after the assignment of interests. The new owner argued that she had been assured by the insurance carrier that the policy remained in effect after the assignment. The insurer, however, argued that the policy had a provision prohibiting an assignment without its written consent. Once the insurer learned of the assignment, it attempted to deny liability.

¶ 21 The court held that the insurance carrier could not deny liability. *Id.* at ¶ 9, 52 P.2d at 1062. The court reasoned that the new owner had been one of the original parties to whom the policy had been issued; that she had been informed by the insurer that the policy remained in effect; that she had operated her business under the assumption that it was covered; and that she had informed those with whom she contracted that she carried insurance. *Id.*

¶ 22 None of the factors relied upon by the court in *Showalter* are present here. The business involved has undergone a complete change in ownership. Rahaman was never informed by the Fund that coverage continued after the sale of the business. On the contrary, an agent of the Fund testified that Rahaman never inquired about transferring the policy. Moreover, based upon Rahaman's own testimony, he was not operating his business under the assumption that it was covered.

¶ 23 The Fund relies on *Showalter* for its statement, "[t]he courts seem generally in accord in holding that provisions for the forfeiting of insurance coverage in the case of alienation, change of interest, title, or possession, and the like, without the insurer's consent, may be lawfully inserted in a policy and are reasonable, valid, and enforceable." *See id.* at ¶ 5, 52 P.2d at 1062. The court recognized that there is an exception to this rule, but only where a sale occurs between partners. *Id.*

¶ 24 Claimant argues that *Showalter* supports his position that the insurance policy remained in effect after the sale of the business because the Fund, in its notice of cancellation, informed Geppetto's that it would be covered until December 20, 1999. This argument is unpersuasive. As we have previously explained, Claimant was working for Papa Geppetto's at the time of his injury, not Geppetto's. Thus, it is immaterial that the cancellation of the policy became effective subsequent to the date of Claimant's injury. The Fund would have only been liable for injuries to claimants who were employed by Moghbel at the time the policy terminated.

## CONCLUSION

¶ 25 The trial court erred in holding that the Fund had an insurance policy in force and effect covering Papa Geppetto's. Papa Geppetto's and Geppetto's are not the same entity, and the insurance policy covering Moghbel as the owner of Geppetto's did not remain in effect subsequent to the sale of the business and the change in ownership. While Claimant may still proceed against Rahaman as the owner of Papa Geppetto's, the Fund is not liable for his injury.

¶ 26 VACATED.

¶ 27 REIF, V.C.J., and GOODMAN, P.J., concur.