MORTON BUILDINGS, INC., Petitioner-Appellant v. E. NORRIS TOLSON, Secretary of Revenue, State of North Carolina, and his successors, Respondent-Appellee

No. COA04-1053

(Filed 2 August 2005)

**Taxation— refund of sales and use tax—lumber, steel, and materials purchased out of state**

A de novo review revealed that the trial court did not err by denying petitioner's request under N.C.G.S. § 105-164.6 for refunds of use tax paid plus interest for lumber, steel, and other materials purchased out of state and assembled in Pennsylvania and Ohio into building components which were incorporated into prefabricated buildings constructed by petitioner in North Carolina, because: (1) contrary to petitioner's argument, the statute does not contain the limitation that the tangible personal property must be in the form in which it was purchased to be taxable; (2) even assuming arguendo that the materials cease to exist when they become part of the building components, the materials as incorporated into building components are still tangible personal property; (3) the Legislature enacted the use tax so that builders could not gain an advantage by purchasing materials outside the state, and the law thus requires that petitioner pay tax on all tangible materials, wherever purchased, which are ultimately used in North Carolina buildings; (4) although the use taxes in

sections (a) and (b) of N.C.G.S. § 105-164.6 are alternative stand alone provisions and petitioner has already been held to be subject to the use tax in section (b), the Court of Appeals nevertheless noted that petitioner would also be subject to the use tax under section (a) since the materials purchased by petitioner were used in North Carolina; (5) contrary to petitioner's assertion, stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate; and (6) while decisions from other jurisdictions may be instructive, they are not binding on the courts of this State.

Appeal by petitioner from judgment dated 14 April 2004 by Judge Wade Barber in Superior Court, Wake County. Heard in the Court of Appeals 23 March 2005.

*Maupin Taylor, P.A., by Charles B. Neely, Jr., Nancy S. Rendleman, and Kevin W. Benedict; and Law Offices of Abraham Stanger, by Abraham M. Stanger, for petitioner-appellant.*

*Attorney General Roy A. Cooper, by Special Deputy Attorney General Kay Linn Miller Hobart, for respondent-appellee.*

McGEE, Judge.

Morton Buildings, Inc. (petitioner) is a construction contractor in the business of producing, selling, and erecting prefabricated warehouses and other buildings for use on farms and in industry in forty states. Petitioner seeks a tax refund for the sales and use tax it paid on lumber, steel, and other materials (collectively materials) purchased out of state. These materials were assembled into trusses, columns, purlins, and metal panels (collectively building components[1]) in Pennsylvania and Ohio. The building components were incorporated into buildings constructed in North Carolina.

Petitioner purchased and stored the materials outside of North Carolina. The materials were not purchased by petitioner for use in any particular customer order, whether in or out of North Carolina.

Pursuant to N.C. Gen. Stat. § 105-266.1, petitioner filed an application with the North Carolina Department of Revenue (the Depart-

---

1. We adopt petitioner's distinction between the terms "materials" and "building components" merely for the sake of clarity throughout this opinion. The distinction has no legal basis.

MORTON BLDGS., INC. v. TOLSON

[172 N.C. App. 119 (2005)]

ment of Revenue) on 18 December 1996 for a refund of use tax paid, plus interest, for the period of 1 November 1993 to 30 June 1996. Petitioner subsequently filed another application for the period of 1 January 1997 to 31 August 1999. The Department of Revenue denied petitioner's second refund request on 3 February 2000 and denied the first request on 31 January 2001.

Petitioner requested and received an administrative hearing by the Secretary of Revenue (respondent), who denied petitioner's requests for refunds in a final decision dated 24 May 2002. Petitioner appealed this final decision to the Tax Review Board pursuant to N.C. Gen. Stat. § 105-241.2. The Tax Review Board sustained respondent's denial of petitioner's requests for refunds and confirmed respondent's final decision on 18 March 2003.

Petitioner petitioned for judicial review of the Tax Review Board's decision on 14 April 2003, pursuant to N.C. Gen. Stat. § 105-241.3. Petitioner argued that both respondent and the Tax Review Board erred in the interpretation and application of N.C. Gen. Stat. § 105-164.6. As statutory interpretation is an issue of law, the trial court reviewed the decision *de novo*, and affirmed the Tax Review Board's decision on 14 April 2004. Petitioner appeals.

Petitioner's sole assignment of error is that the trial court erred in failing to give effect to the plain language of N.C.G.S. § 105-164.6, which governs the imposition of use tax. In reviewing an order from a trial court acting in an appellate capacity, our scope of review is restricted to evaluating the trial court's order for errors of law. *Shackleford-Moten v. Lenoir Cty. DSS*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002) (citing *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)), *disc. review denied*, 357 N.C. 252, 582 S.E.2d 609 (2003). "In those cases where the superior court [was] required to employ a *de novo* standard of review of the agency's decision, appellate review of the superior court's order requires that this Court also review the agency's decision *de novo*." *R.J. Reynolds Tobacco Co. v. N.C. Dep't of Env't & Natural Res.*, 148 N.C. App. 610, 615, 560 S.E.2d 163, 167, *disc. review denied*, 355 N.C. 493, 564 S.E.2d 44 (2002). The trial court employed a *de novo* review in the present case, and petitioner raises questions of law; therefore, we review the trial court's judgment *de novo*.

Petitioner first argues that the use tax does not apply to petitioner's materials or building components, and the trial court erred by

ignoring the plain language of the sales and use tax statute. We disagree. N.C. Gen. Stat. § 105-164.6(b) provides:

> An excise tax at the general rate of tax set in G.S. 105-164.4 is imposed on the purchase price of tangible personal property purchased inside or outside the State that becomes a part of a building or other structure in the State. The purchaser of the property is liable for the tax.

N.C.G.S. § 105-164.6(b) (2003). Tangible personal property is defined as "[p]ersonal property that may be seen, weighed, measured, felt, or touched or is in any other manner perceptible to the senses." N.C. Gen. Stat. § 105-164.3(46) (2003). Petitioner does not dispute that it purchased materials, nor that the materials petitioner purchased were tangible personal property. Rather, petitioner argues that the materials did not become "part of a building or other structure in the State." See N.C.G.S. § 105-164.6(b). Petitioner further argues that the materials were "consumed" and "transformed" into building components outside of North Carolina, and thus it was the building components that became "part of a building or other structure in the State." See id. Inherent to petitioner's argument is its belief that the statute only taxes items of tangible personal property that are used "in the form in which they were purchased[.]" Specifically, petitioner asserts that the materials "cease to exist upon their consumption and transformation in the manufacture of building components[.]" Thus, petitioner argues that since it did not purchase the building components, and since the materials purchased by petitioner were not incorporated into a building or structure in their unaltered state, petitioner is not subject to the excise tax set forth in N.C.G.S. § 105-164.6(b).

However, since the plain language of the statute is clear and unambiguous, we are unpersuaded by petitioner's arguments. " 'Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and *limitations* not contained therein.' " *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (quoting 7 Strong, N.C. Index 2d Statutes § 5 (1968)) (emphasis added). Contrary to petitioner's argument, the statute does not contain the limitation that the tangible personal property must be "in the form in which [it was] purchased" to be taxable. We do not agree with petitioner that the materials "cease to exist" when they are assembled into trusses, columns, purlins, and metal panels. However, even

assuming *arguendo* that the materials "cease to exist" when they become part of the building components, the materials as incorporated into building components are still tangible personal property. Therefore, the statute applies to the materials purchased by petitioner because the materials, which are tangible personal property, became "part of a building or other structure in the State." *See* N.C.G.S. § 105-164.6(b).

To hold otherwise would violate the purpose of the use tax. Our Supreme Court has held that the General Assembly intended for the use tax "to impose the same burdens on out-of-state purchases as the sales tax imposes on purchases within the state." *Pipeline Co. v. Clayton, Comr. of Revenue*, 275 N.C. 215, 223, 166 S.E.2d 671, 677 (1969); *see also Robinson & Hale, Inc. v. Shaw, Comr. of Revenue*, 242 N.C. 486, 488, 87 S.E.2d 909, 910-11 (1955) (discussing the predecessor statute to N.C.G.S. § 105-164.6 and stating the statute "discloses a clear legislative intent to make out-of-state purchases of building materials, other than those expressly exempted, subject to the same burdens imposed by the sales tax on purchases within the State"). In the present case, the trial court properly concluded that "[t]he Legislature enacted the use tax so that builders could not gain an advantage by purchasing materials outside the state. The law thus requires that [petitioner] pay tax on all tangible materials, wherever purchased, which are ultimately used in North Carolina buildings." We affirm the decision of the trial court.

Petitioner also argues that it is exempt from the use tax imposed under section (a) of N.C.G.S. § 105-164.6, which provides: "An excise tax . . . is imposed on the storage, use, or consumption in this State of tangible personal property purchased inside or outside the State for storage, use, or consumption in the State[.]" Specifically, petitioner argues that section (a) does not apply because petitioner's raw materials are not stored, used, or consumed in North Carolina. Petitioner contends that while it purchased the raw materials, the raw materials are not only stored outside North Carolina, but that they are "used," "consumed," and "transformed" into building components outside of North Carolina. Petitioner asserts that "[i]t is the [b]uilding [c]omponents, a manufactured product distinct from the [r]aw [m]aterials, that are brought into the State."

Since the use taxes in sections (a) and (b) of N.C.G.S. § 105-164.6 are alternative stand alone provisions, and since petitioner is subject to the use tax in section (b) of N.C.G.S. § 105-164.6, we need not review petitioner's argument that it is not subject to the use tax

set forth in section (a). Nevertheless, we note that petitioner is also subject to the use tax under section (a) because the materials purchased by petitioner were used in North Carolina. "Use" is defined by N.C.G.S. § 105-164.3(49) (2003) as including:

> the exercise of any right or power or dominion whatsoever over tangible personal property by a purchaser thereof and [including, but not limited to] any withdrawal from storage, distribution, installation, affixation to real or personal property, or exhaustion or consumption of tangible personal property by the owner or purchaser thereof, but does not include the sale of tangible personal property in the regular course of business.

By incorporating the lumber and other materials petitioner purchased into the buildings petitioner constructed in North Carolina, petitioner exercised a right, power, and dominion over, and therefore *used* the lumber and other materials. Petitioner is subject to the use tax under both sections (a) and (b) of N.C.G.S. § 105-164.6.

Petitioner next argues that the trial court erroneously ignored stipulated facts. Specifically, petitioner argues that the trial court erred in failing to distinguish between materials and building components when the parties stipulated that the materials were "consumed and transformed by [petitioner] in the manufacture of finished [b]uilding [c]omponents[.]" Petitioner asserts that because N.C.G.S. § 105-164.6 only applies to tangible personal property that is *purchased*, the trial court erred when, despite "[n]umerous references to 'manufacturing processes' or 'manufacture' " throughout the stipulations, it did not recognize that the building components were not purchased but manufactured.

In support of its argument, petitioner cites *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 513, 164 S.E.2d 289, 295 (1968), which states: " ' "manufacturing" has been defined as the producing of a new article or use or ornament by the application of skill and labor to the raw materials of which it is composed.' " *Id.* (quoting 55 C.J.S. Manufactures, § 1 at 667 and 670 (1948)). Petitioner further argues that, as the parties stipulated, the materials were "consumed and transformed" into a different tangible personal property, i.e., building components, because skill and labor were applied to the materials "to create a different article with a singular use." Petitioner further argues that because the lumber and steel it purchased as materials lost their identities when they were manufactured into trusses, purlins, and other building components, the trial court erred

in treating both the materials and the building components as the same tangible personal property.

However, petitioner ignores that "[s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *State v. Prevette*, 39 N.C. App. 470, 472, 250 S.E.2d 682, 683 (citing 73 Am. Jur. 2d Stipulations § 5 (1974); 5 Am. Jur. 2d Appeal and Error § 712 (1962)), *disc. review denied*, 297 N.C. 179, 254 S.E.2d 38 (1979); *see also Carringer v. Alverson*, 254 N.C. 204, 208, 118 S.E.2d 408, 411 (1961). Whether the materials purchased by petitioner were "manufactured" into building components is a question of law. *Hart v. Gregory*, 218 N.C. 184, 193, 10 S.E.2d 644, 650 (1940) (stating "whether [particular] acts constituted the 'manufacture or production of lumber' was a question of law for the court to decide"). Similarly, whether the materials were "consumed and transformed" is a question of law, and the parties' stipulations as to these words are not binding on the trial court or our Court.

"Manufacture implies a change, but every change is not manufacture, but every change in an article is the result of treatment, labor, and manipulation. But something more is necessary[.] . . . There must be transformation; a new and different article must emerge, having a distinctive name, character or use." *Anheuser-Busch Brewing Ass'n v. United States*, 207 U.S. 556, 562, 52 L. Ed. 336, 338 (1908) ("A cork put through the claimant's process [of preparing the encasement of the beer] is still a cork."). Though petitioner claims that it transforms the lumber, steel and other materials into a different article by a different name, that being "building components," we are not persuaded that these building components have a distinct character or use. As the trial court found, petitioner constructs trusses in the following manner:

[T]he lumber for the upper and lower chords of the truss are run through a machine that cuts the chords to the proper lengths and to the proper angles at both ends of each board. Lumber webbing, which is attached between the upper and lower chords, is also cut to the correct length and to the correct angles. The boards for the trusses (chords and webs) are then positioned "face-up" on a fixture table and metal gusset plates are positioned at each joint. The metal gusset plates are made by [petitioner] from rolled steel. The gusset plates are then stitched into position with a pneumatic gun nailer. The truss is then repositioned "face-down" and additional metal gusset plates are positioned onto the joints

on that side of the truss. The truss is then put through a roller press which imbeds the metal gusset plates into the wooden chords and webs.

The above rudimentary process may change the form of the materials purchased by petitioner, but it is difficult to discern how the building components are a different article with a "distinctive . . . character and use." *See Anheuser-Busch Brewing Ass'n*, 207 U.S. at 562, 52 L. Ed. at 338; *see also Morton Bldgs. v. Vermont Dep't of Taxes*, 705 A.2d 1384, 1388 (1997). *Cf. In re Clayton-Marcus Co.*, 286 N.C. 215, 224, 210 S.E.2d 199, 205 (1974) (concluding that Clayton-Marcus Co. had "manufactured" swatch books because they were "new and different article[s] from the fabrics . . . contained therein"). The trial court did not err in noting that although the parties had stipulated to the word "manufacture," the term "assembly" was more descriptive.

Similarly, although the parties stipulated that the materials purchased by petitioner were "consumed" in petitioner's manufacture process, the trial court did not err in concluding that the materials "were not 'consumed' in the way the word is normally understood." If the statute "contains a definition of a word used therein, that definition controls[.]" *Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 203. However, nothing else appearing, "words must be given their common and ordinary meaning[.]" *Id.* at 219, 210 S.E.2d at 202-03. As the Sales and Use Tax Act does not define "consume," the trial court properly applied the "common and ordinary meaning" of the term. The trial court did not err in noting:

"Consume" is defined as "to expend or use up," or "to destroy totally; ravage." The American Heritage Dictionary of the English Language (4th ed. 2000). The [m]aterials were not destroyed or expended; they were used by [petitioner] to make [b]uilding [c]omponents that were then brought into North Carolina and incorporated into [petitioner's] buildings.

Accordingly, we affirm the trial court's decision as to the questions of law in the parties' stipulations.

Finally, petitioner argues that the trial court improperly rejected the weight of authority from other jurisdictions. Petitioner argues that it has "previously litigated this very issue in a number of other jurisdictions throughout the United States" and that seven out of ten courts "have rendered final decisions in favor of" petitioner. However, petitioner does not cite any authority for its argument as to why the trial court erred, and this argument is thus abandoned pur-

suant to N.C.R. App. P. 28(b)(6). Furthermore, while decisions from other jurisdictions may be instructive, they are not binding on the courts of this State. *See Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 465, 515 S.E.2d 675, 686 (1999).

Affirmed.

Judges HUNTER and STEELMAN concur.