RICARDO DIAZ, Employee, Plaintiff v. JERRY MARK SMITH, d/b/a SMITH'S HOME REPAIR, Employer TRAVELERS INDEMNITY COMPANY, Carrier, Defendants

No. COA10-694-2

(Filed 3 April 2012)

**1. Workers' Compensation— party aggrieved—determination of insurance coverage—standing**

Petitioner employee in a workers' compensation case was a party aggrieved, even though he was awarded all the benefits that he claimed, and had standing to challenge the Industrial Commission's determination that defendant employer's workers' compensation insurance policy was properly cancelled. An employee is "aggrieved" by a workers' compensation tribunal's determination regarding workers' compensation insurance coverage.

**2. Workers' Compensation—cancellation of insurance policy —premium finance agreement—proper procedure for cancellation**

The Industrial Commission did not erroneously apply N.C.G.S. § 58-35-85, which provides the procedures for cancelling an insurance policy financed by a premium finance agreement, in determining that plaintiff employee's workers' compensation insurance policy was effectively cancelled. The third-party financing company was authorized by the power of attorney clause of the financing agreement to cancel plaintiff's policy with Travelers and the financing company properly did so via the "Notice of Cancellation" sent on 15 January 2007.

Appeal by plaintiff from opinion and award entered 19 March 2010 by the North Carolina Industrial Commission. Originally heard in the Court of Appeals 10 January 2011. Petition for Rehearing granted 6 May 2011.

*The Olive Law Firm, PA, by Juan A. Sanchez, for plaintiff-appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Kelli A. Burns, M. Duane Jones, and Shelley W. Coleman, for defendant-appellee Travelers Indemnity Company.*

HUNTER, Robert C., Judge.

## DIAZ v. SMITH

[219 N.C. App. 570 (2012)]

Plaintiff Ricardo Diaz ("plaintiff") appeals from the Industrial Commission's opinion and award in which it awarded plaintiff workers' compensation benefits, but concluded that defendant-employer Jerry Mark Smith's ("Smith") workers' compensation insurance policy had been effectively cancelled by defendant-carrier Travelers Indemnity Company ("Travelers"). This case was originally decided 5 April 2011. *See Diaz v. Smith*, ___ N.C. App. ___, 709 S.E.2d 424 (2011). We held that the Commission applied the notice requirements of the incorrect statute in determining whether Smith's insurance policy was properly cancelled. Consequently, we reversed and remanded the Commission's opinion and award. On 6 May 2011, Travelers' Petition for Rehearing was granted. After careful review upon rehearing, we affirm the Commission's opinion and award.[1]

## Facts

Smith began Smith's Home Repair in the summer of 2006. After submitting an application with the North Carolina Rate Bureau, Smith obtained a workers' compensation insurance policy with Travelers as an assigned risk policy. Because Smith could not afford to pay his premium in full, he financed the premium through a third party known as Monthly Payment Plan, Inc. ("MPP"). MPP's financing agreement included a power of attorney provision authorizing MPP to cancel Smith's policy if he failed to make timely payments. Smith signed neither the Travelers' policy nor the MPP financing agreement; both were signed in Smith's name by his insurance agent, David Cantwell. An acknowledgment page, not normally contained in "regular policies," was included at the end of Smith's policy with Travelers, notifying him that, pursuant to the power of attorney clause in the financing agreement, MPP could cancel his policy for non-payment.

In November 2006, MPP cancelled Smith's policy for non-payment of premiums. The policy was reinstated, however, after MPP received Smith's monthly premium payment. After Smith failed to make his premium payment for January 2007, MPP sent Smith a letter dated 2 January 2007, titled "Ten Day Notice," advising Smith that "unless payment is made within ten days from the date of th[e] letter," his workers' compensation policy would be "cancelled through the use of [the] power of attorney that [he] signed." MPP sent copies of this letter by regular mail to Smith's correct address in Asheville,

---

1. Due to an oversight at the Court, this opinion was delayed. We apologize for this delay.

North Carolina, as well as to Cantwell's office. Both Smith and Cantwell received their respective copy of the letter.

After MPP did not receive payment from Smith, MPP sent a "Notice of Cancellation" letter, dated 15 January 2007, notifying Smith of MPP's intent to cancel his policy through the power of attorney provision in the finance agreement. Copies of this notice were sent to Smith's address and Cantwell's; both received the notice. A copy of the notice of intent also was sent to Travelers, notifying the insurer of MPP's intent to cancel Smith's policy through its power of attorney.

By certified mail, Traveler's sent a letter headed "Notice of Cancellation—Nonpayment of Premium Financed Policy," explaining that MPP had "exercised its right to cancel th[e] policy as provided in its agreement with [Smith], due to [Smith]'s delinquent payment status." Although the notice of cancellation stated that it was "issue[d]" on 1 February 2007, it back-dated the cancellation to be effective 25 January 2007. Travelers' notice of cancellation was sent to Smith at the last known address in its file, which was not Smith's then-current address. Smith did not receive the notice; the certified letter was returned undelivered to Travelers on 12 February 2007.

After conducting an audit on 5 March 2007, Travelers returned $317.00 in unearned premiums to MPP. MPP issued Smith a refund check of $225.00. Smith cashed the check without contacting anyone but his insurance agent for an explanation of the refund.

Plaintiff began working for Smith around 17 April 2007 as a framer and roofer, working approximately 40 hours a week at $10.00 an hour. On 20 July 2007, plaintiff fell off the roof on which he was working and injured his left arm. Plaintiff was seen in Mission Hospital's emergency room, where x-rays showed that he had fractured his left humerus and dislocated his left elbow. His elbow was splinted and reduced. On 1 August 2007, plaintiff underwent "open reduction, internal fixation of the humerus, and exploration of the radial nerve."

Plaintiff was released by his doctor to return to sedentary work, without any use of his left arm, on 17 September 2007. On that day, plaintiff filed his claim for workers' compensation benefits. Defendants denied plaintiff's claim "for lack of coverage" on 28 September 2007. Plaintiff did not return to work until 3 January 2008, when he started working for another employer at the same or greater average weekly wage. Plaintiff's doctor assigned a 20% permanent

partial impairment rating to his left arm, with lifting restrictions of no more than 40 pounds with his left arm.

After conducting an evidentiary hearing on plaintiff's claim on 29 May 2008, the deputy commissioner entered an opinion and award on 23 December 2008, in which he concluded that plaintiff had sustained a compensable injury on 20 July 2007, and, as a result, was entitled to disability as well as ongoing medical benefits. The deputy commissioner also determined that Travelers had failed to comply with the notice requirements of N.C. Gen. Stat. § 58-36-105 (2009) in attempting to cancel Smith's workers' compensation policy. Thus, the deputy commissioner concluded, Travelers' cancellation was ineffective and the policy was "in full effect" on 20 July 2007.

Defendants appealed to the Full Commission, which issued an amended opinion and award on 19 March 2010, in which the Commission upheld the deputy commissioner's conclusion that plaintiff was entitled to disability and medical benefits as a result his compensable injury. The Commission ruled, however, that N.C. Gen. Stat. § 58-36-105 did not govern the cancellation of Smith's policy and that "Defendant Smith's policy was effectively and properly cancelled pursuant to the power of attorney held by MPP and in accordance with § 58-35-85." Based on this determination, the Commission held that Smith, not Travelers, was liable for plaintiff's benefits. Plaintiff timely appealed to this Court.

I

[1] Before reaching plaintiff's argument for reversal of the Commission's opinion and award, we address Travelers' contention that plaintiff, as he was awarded all workers' compensation benefits that he claimed, is not a "party aggrieved" by the Commission's decision. The Workers' Compensation Act provides that an appeal from an opinion and award of the Industrial Commission is subject to the "same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions." N.C. Gen. Stat. § 97-86 (2009); *Ratchford v. C.C. Mangum, Inc.*, 150 N.C. App. 197, 199, 564 S.E.2d 245, 247 (2002). Under N.C. Gen. Stat. § 1-271 (2009), " '[a]ny party aggrieved' is entitled to appeal in a civil action." *Moody v. Sears Roebuck & Co.*, 191 N.C. App. 256, 262-63, 664 S.E.2d 569, 574 (2008). A "party aggrieved" is one whose legal rights have been denied or directly and injuriously affected by the action of the trial tribunal. *Selective Ins. Co. v. Mid Carolina Insulation Co.*, 126 N.C. App. 217, 219, 484 S.E.2d 443, 445 (1997). If the party seeking

appeal is not an aggrieved party, the party lacks standing to challenge the lower tribunal's action and any attempted appeal must be dismissed. *Culton v. Culton*, 327 N.C. 624, 626, 398 S.E.2d 323, 325 (1990), *superseded by statute on other grounds as recognized in In re J.A.A.*, 175 N.C. App. 66, 72 73, 623 S.E.2d 45, 49 (2005).

Generally, when an employee has been awarded the benefits to which he or she claimed entitlement under the Workers' Compensation Act, the employee is not aggrieved and lacks standing to appeal the Industrial Commission's decision. *See Henke v. First Colony Builders, Inc.*, 126 N.C. App. 703, 705, 486 S.E.2d 431, 432 (concluding claimant, who had been "granted workers' compensation benefits, as well as attorney's fees" was not aggrieved by Commission's denial of request for interest to be included in payment to her attorney as "[p]laintiff suffer[ed] no direct legal injury in the denial of interest payments to her attorney"), *appeal dismissed, disc. review denied, and cert. denied*, 347 N.C. 266, 493 S.E.2d 455 (1997). Plaintiff acknowledges that the Commission's decision awards him all the benefits he requested, but contends that he is a "party aggrieved" in that "[t]he decision by the Full Commission adversely affects [his] ability to collect his monetary benefits and all but negates his ability to receive further treatment."

Although the parties fail to point to any North Carolina authority—and we have found none—directly on point, other appellate courts that have addressed this issue have held that an employee is "aggrieved" by a workers' compensation tribunal's determination regarding workers' compensation insurance coverage. *See, e.g., Shope v. Workmen's Comp. Appeals Bd.*, 21 Cal. App. 3d 774, 777, 98 Cal. Rptr. 768, 770 (1971) ("Petitioner was affected by the decision of the Board determining that he had no recovery against Carrier and that he would have to look for recompense to an employer who was no longer in business and whose financial ability to pay the award was problematical. We, therefore, hold that petitioner has standing to have this court review the Board's determination as to the insurance coverage."); *Associated Theaters v. Industrial Acc. Commission*, 57 Cal. App. 105, 107, 206 P. 665, 666 (1922) (holding that employee was a "party aggrieved" entitled to seek review of industrial accident commission's determination that employee's injury was outside the scope of employer's insurance coverage and thus could recover only from employer); *In re Hughes*, 273 P.2d 450, 454 (Okla. 1954) (holding that where benefits for injuries to employee was awarded against employer by an order of the state's industrial commission relieving

insurer from liability and there was a possibility that employer would not be able to satisfy award due to lack of assets, employee was a "party aggrieved" with standing to challenge order). Although not controlling, *see Morton Bldgs., Inc. v. Tolson*, 172 N.C. App. 119, 127, 615 S.E.2d 906, 912 (2005) ("[W]hile decisions from other jurisdictions may be instructive, they are not binding on the courts of this State."), we find these authorities persuasive and conclude that plaintiff is a "party aggrieved" by the Commission's determination that Smith's workers' compensation insurance was properly cancelled.

This conclusion is, moreover, consistent with the long-standing principle that courts "must construe the Work[ers'] Compensation Act liberally so as to effectuate its human purpose of providing compensation for injured employees." *Roper v. J.P. Stevens & Co.*, 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983), *disc. review denied*, 310 N.C. 309, 312 S.E.2d 652 (1984); *see also Hughes*, 273 P.2d at 454 ("We think that, under the proper interpretation of our Workmen's Compensation Law, which we are bound to liberally construe in favor of the employee, when the protection of industrial insurance contemplated in the Act is denied such employee by a final order of the State Industrial Commission he certainly is an 'aggrieved' party . . . .").

II

[2] Turning to plaintiff's contention on appeal, he argues that the Commission erroneously applied N.C. Gen. Stat. § 58-35-85 (2009), which provides the procedures for cancelling an insurance policy financed by a premium finance agreement, in determining whether Smith's workers' compensation insurance policy was effectively cancelled. Plaintiff contends that the procedures set out in N.C. Gen. Stat. § 58-36-105 (2009) for cancelling workers' compensation insurance policies governed the cancellation of Smith's insurance policy. Because, plaintiff argues, Travelers failed to follow N.C. Gen. Stat. § 58-36-105's requirements in cancelling Smith's policy, the cancellation was ineffective and Smith's workers' compensation policy was in effect on the date of his compensable injury.

Issues involving statutory interpretation are questions of law, reviewed *de novo* on appeal. *In re Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009); *see Oxendine v. TWL, Inc.*, 184 N.C. App. 162, 164, 645 S.E.2d 864, 865 (2007) (reviewing *de novo* determination of which of two competing statutes controlled in workers' compensation case).

N.C. Gen. Stat. § 58-36-105, titled "Certain workers' compensation insurance policy cancellations prohibited," provides in pertinent part:

> (a)  No policy of workers' compensation insurance or employ-ers' liability insurance written in connection with a policy of workers' compensation insurance shall be cancelled by the insurer before the expiration of the term or anniversary date stated in the policy and without the prior written consent of the insured, except for any one of the following reasons:
>
>> (1)  Nonpayment of premium in accordance with the policy terms.
>>
>> . . . .
>
> (b)  Any cancellation permitted by subsection (a) of this sec-tion is not effective unless written notice of cancellation has been given by registered or certified mail, return receipt requested, to the insured not less than 15 days before the pro-posed effective date of cancellation. . . . Whenever notice of intention to cancel is required to be given by registered or cer-tified mail, no cancellation by the insurer shall be effective unless and until such method is employed and completed. . . .

N.C. Gen. Stat. § 58-36-105(a)-(b). N.C. Gen. Stat. § 58 35 85 sets out the procedure for cancellation of an insurance policy by an insurance premium finance company:

> When an insurance premium finance agreement contains a power of attorney or other authority enabling the insurance premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled unless the cancellation is effectuated in accordance with the following provisions:
>
>> (1)  Not less than 10 days' written notice is sent by personal delivery, first class mail, electronic mail, or facsimile trans-mission to the last known address of the insured or insureds shown on the insurance premium finance agreement of the intent of the insurance premium finance company to cancel his or their insurance contract or contracts unless the defaulted installment payment is received. Notification thereof shall also be provided to the insurance agent.
>>
>> (2)  After expiration of the 10-day period, the insurance pre-mium finance company shall send the insurer a request for

cancellation and shall send notice of the requested cancellation to the insured by personal delivery, first-class mail, electronic mail, electronic transmission, or facsimile transmission at his last known address as shown on the records of the insurance premium finance company and to the agent. . . .

(3) Upon receipt of a copy of the request for cancellation notice by the insurer, the insurance contract shall be cancelled with the same force and effect as if the request for cancellation had been submitted by the insured, without requiring the return of the insurance contract or contracts.

(4) All statutory, regulatory, and contractual restrictions providing that the insured may not cancel the insurance contract unless the insurer first satisfies the restrictions by giving a prescribed notice to a governmental agency, the insurance carrier, an individual, or a person designated to receive the notice for said governmental agency, insurance carrier, or individual shall apply where cancellation is effected under the provisions of this section.

N.C. Gen. Stat. § 58-35-85(1)-(4).

We previously held in this case that N.C. Gen. Stat. § 58-36-105 and N.C. Gen. Stat. § 58-35-85 overlap with regard to cancellation of a workers' compensation insurance policy, but that N.C. Gen. Stat. § 58-36-105 is the more specific statute and is, therefore, controlling. *Diaz*, ___ N.C. App. at ___, 709 S.E.2d at 429. Upon re-examination, we hold that only N.C. Gen. Stat. § 58-35-85 applies in situations, such as in the case *sub judice,* where a premium finance company with power of attorney initiates cancellation of a workers' compensation insurance policy.

The clear language of N.C. Gen. Stat. § 58-36-105 states that without written consent from the insured, a policy of workers' compensation insurance "shall not be cancelled by the insurer before the expiration of the term or anniversary dates stated in the policy[,]" subject to 10 enumerated exceptions. N.C. Gen. Stat. § 58-36-105(a)(1)-(10). This statute clearly applies to situations where the insurer seeks to cancel the insured's policy prior to expiration of the policy. It follows that this statute does not apply where the insured requests cancellation of the policy. Rather, N.C. Gen. Stat. § 58-35-85 applies where a premium finance company with power of attorney, such as MPP, steps into the shoes of the insured and requests cancellation of an insurance policy

due to a breach of the financing agreement. *Unisun Ins. Co. v. Goodman*, 117 N.C. App. 454, 455-56, 451 S.E.2d 4, 5 (1994) ("The procedure for cancellation of an insurance policy where the premium is financed by a premium financing company, and, where the insured defaults on the finance agreement, is governed by N.C. Gen. Stat. § 58-35-85[.]"), *disc. review denied*, 339 N.C. 742, 454 S.E.2d 662 (1995). While N.C. Gen. Stat. § 58-35-85 refers to "insurance contracts" generally and does not specifically refer to workers' compensation insurance policies, this Court has held that N.C. Gen. Stat. § 58-35-85's predecessor, N.C. Gen. Stat. § 58-60, applied to workers' compensation policies. *Graves v. ABC Roofing Co.*, 55 N.C. App. 252, 253-55, 284 S.E.2d 718, 719 (1981).

Here, it does not appear that Travelers had any reason to attempt to cancel Smith's workers' compensation insurance policy, and did not attempt to do so. The premiums for the Travelers policy had been paid by MPP on Smith's behalf. MPP, however, was not receiving payment from Smith in violation of the financing agreement, and, therefore, had the ability through the power of attorney clause in the financing agreement to cancel Smith's policy with Travelers. MPP was bound to follow the provisions of N.C. Gen. Stat. § 58-35-85 regarding notice and return of unearned premiums, which it did. *Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 254, 382 S.E.2d 745, 748 (1989) ("In order to cancel a policy the carrier must comply with the procedural requirements of the statute . . . .").

Still, plaintiff contends that MPP is not the insured, and, therefore, it could not cancel the policy. Plaintiff claims that if MPP could not step into the shoes of the insured and cancel the policy, then Travelers was effectively canceling the policy without consent of the insured and in violation of N.C. Gen. Stat. § 58-36-105. Plaintiff points to the fact that N.C. Gen. Stat. § 58-36-105 refers to "the insured" in section (a), but then refers to "the insured or the insured's representative" in subsections (a)(2), (a)(5), and (a)(6). Plaintiff argues that the insured and the insured's representative are not one in the same. In the subsections mentioned by plaintiff, the legislature was setting forth the circumstances by which the insurer could cancel the insured's policy without consent of the insured. It is clear that the legislature wished to set out that wrongdoing by an insured or an insured's representative, whomever that might be, could potentially justify cancellation of the contract. In certain situations, the insured and the insured's representative may not be one in the same for purposes of N.C. Gen. Stat. § 58-36-105(a)(2), (a)(5), (a)(6); however, we

do not interpret this language to mean that a premium finance company cannot step into the shoes of the insured and cancel the policy under the power of attorney provision. While Smith and MPP are not the same entity, "[a] power of attorney creates an agency relationship between one who gives the power, the principal, and one who exercises authority under the power of attorney, the agent." *Whitford v. Gaskill*, 119 N.C. App. 790, 793, 460 S.E.2d 346, 348 (1995), *rev'd on other grounds*, 345 N.C. 475, 480 S.E.2d 690 (1997); *see Branch Banking and Trust Co. v. Creasy*, 301 N.C. 44, 56, 269 S.E.2d 117, 124 (1980) ("An agent is one who acts for or in the place of another by authority from him."). MPP was Smith's agent and was acting in the place of Smith by authority from him.[2]

Moreover, N.C. Gen. Stat. § 58-35-85(3) (emphasis added), which we hold is controlling, states: "Upon receipt of a copy of the request for cancellation notice by the insurer, the insurance contract *shall be cancelled with the same force and effect as if the request for cancellation had been submitted by the insured*, without requiring the return of the insurance contract or contracts." This Court has interpreted this provision and recognized that a premium finance company has the authority under the power of attorney provision of the financing agreement to cancel an insurance policy on behalf of the insured. *See Cahoon v. Canal Ins. Co.*, 140 N.C. App. 577, 579-83, 537 S.E.2d 538, 540-42 (2000) (holding that premium finance company followed the provisions of N.C. Gen. Stat. § 58-35-85 and effectively cancelled the insured's policy); *Unisun Inc. Co.*, 117 N.C. App. at 457, 451 S.E.2d at 6 ("[C]ancellation requested by a finance company occurs in the same manner as if the insured requested the cancellation."). While *Cahoon* and *Unisun* were decided prior to the enactment of N.C. Gen. Stat. § 58-36-105, they are nevertheless controlling with regards to N.C. Gen. Stat. § 58-35-85, which is the applicable statute in this case. Based on this statute and the relevant caselaw, we hold that MPP was permitted to invoke the power of attorney provision in the financing agreement and cancel Smith's policy with Travelers. Effectively, Smith, the insured, was initiating cancellation of the policy through his agent. Because Travelers was not cancelling the policy on its own initiative, N.C. Gen. Stat. § 58-36-105 simply does not apply.

---

2. Plaintiff argues that Smith's agent endorsed the power of attorney on Smith's behalf without authorization. Plaintiff did not argue before the Industrial Commission that the power of attorney was forged and therefore invalid. We decline to address this argument on appeal. N.C. R. App. P. 10(a)(1).

Plaintiff also contends that even if MPP was permitted to request cancellation, N.C. Gen. Stat. § 58-35-85(4) "contemplates the additional restrictions contained in N.C. Gen. Stat. § 58-36-105(b)." Plaintiff argues that "the legislature wanted the insured employer to receive a Notice of Cancellation that stated the reason for cancellation even when the insured himself had consented to such a cancellation." This interpretation would create an untoward result. Reading the statutes together, it is apparent that the legislature did not intend to require the insurer to notify the insured of the reason for cancellation pursuant to N.C. Gen. Stat. § 58-36-105(b) where the insured, either personally or through his agent, has provided a written notice of cancellation pursuant to N.C. Gen. Stat. § 58-35-85. We note that N.C. Gen. Stat. § 58-35-85(2) states that the premium finance company must provide notice to the insured that a request for cancellation has been made. This provision guarantees that the insured is made aware that his agent has requested cancellation. Smith received the Notice of Cancellation sent to Travelers on 15 January 2007.

## Conclusion

Based on the foregoing, we hold that MPP was authorized by the power of attorney clause of the financing agreement to cancel Smith's policy with Travelers and that MPP properly did so via the "Notice of Cancellation" sent on 15 January 2007. Consequently, because Travelers had received prior written consent of the insured and was not unilaterally attempting to cancel Smith's policy, N.C. Gen. Stat. § 58-36-105 is inapplicable in this case. We hold that the Industrial Commission properly concluded that "Defendant Smith's policy was effectively and properly cancelled pursuant to the power of attorney held by MPP and in accordance with § 58-35-85." We affirm the opinion and award of the Full Commission.

Affirmed.

Chief Judge MARTIN and Judge THIGPEN concur.